264

## WILSON v. MEMPHIS PUB. CO.—231 S. W. (2d) 404.

Western Section.    January 6, 1950.

Petition for Certiorari denied by Supreme Court, April 29, 1950.

Hughie Ragan, and H. Carmack Murchison, both of Jackson, for plaintiff in error.

Millsaps Fitzhugh, of Memphis, and Moss & Benton of Jackson, for defendant in error.

GRAY, Sp. J. This is a suit filed by plaintiff-in-error, hereinafter referred to as plaintiff, in the Circuit Court of Madison County, Tennessee, against the defendant-in-error, herein after called defendant, in which the plaintiff sues the defendant for Fifty Thousand and 00/100 dollars ($50,000.00), claiming to have been damaged to that amount by reason of the publication of an article in the Memphis Commercial Appeal, insisting that said article inaccurately and wrongly reported the proceedings before a beer commission relative to the business of the plaintiff. Service of process was had on one Malcolm Law, who was named in the summons as "agent for service of process in Madison County." This was the only service of process in the case. The defendant filed a plea in abatement to the jurisdiction, in which it challenged the venue and the service of process upon the defendant, alleging that the defendant was a Delaware corporation and engaged in the publication of two newspapers and a radio station in Shelby County, Tennessee, and that it was not doing business in Madison County, Tennessee, so that service of process could be had upon it in Madison County, Tennessee, also alleging in said plea in abatement that said Malcolm Law was not, when said suit was filed, nor at anytime, an agent of the defendant or a person upon whom process for or against the defendant might be legally had, and that the said Law was an

independent contractor. The plea in abatement further states that Law was twenty-four years of age and was a student at Lambuth College, and that as a sideline he wrote certain articles and news items which he sold to the defendant, and that he received pay for said services, his compensation differing each month, and that said Law had no authority whatsoever, express or implied, to act for defendant as its agent or employee. The plaintiff filed his replication to the plea in abatement, joining issue with the defendant on each and every averment set forth in the plea and demanded a jury to try the issues of fact involved in his plea. A jury was impaneled and proof was heard, consisting of the testimony of two witnesses, namely, Malcolm Law and Eugene D. Rutland, both of whom were offered to sustain the defendant's plea in abatement. No proof was offered by the plaintiff. At the close of the proof offered by the defendant, the plaintiff moved for peremptory instruction in its favor, which motion was by the Court overruled, to which action the plaintiff excepted. At the conclusion of all of the proof plaintiff renewed his motion for a directed verdict in his favor, which motion was overruled and disallowed, and to which action the plaintiff excepted, and likewise, at the conclusion of the evidence, the defendant moved that the Court peremptorily instruct the jury to return a verdict in its favor upon the grounds that there was no evidence upon which the jury could predicate a verdict otherwise than in favor of the defendant. That there was no disputed question of fact presented for consideration by the jury, and that the question involved was one of law to be decided by the Court. After consideration of said motion and argument of counsel, the motion by the defendant was by the

Court sustained. The Court instructed the jury that its verdict on the issues joined in the plea in abatement must be in favor of the defendant, the Court sustaining the plea in abatement.

Plaintiff filed a motion for a new trial, setting out three grounds thereof, first, that the Court was in error in granting the motion for a directed verdict made in behalf of the defendant, as there were questions of fact that should be determined by the jury; second, that the Court was in error in granting the motion for an instructed verdict of the defendant for the reason there was no material evidence justifying a verdict against Hugh W. Wilson; third, that the Court was in error in granting the directed verdict, because there was no material evidence justifying a verdict of judgment against Hugh W. Wilson. Motion for a new trial was overruled, and the plaintiff prayed and perfected an appeal in the nature of a writ of error to this Court and through assignments of error insists that the trial court was in error in sustaining the motion of defendant for a directed verdict, the assignments of error being the same as heretofore set out as insisted upon in the motion for a new trial.

As stated above, the only proof offered in the case was the testimony of Law and Rutland, this proof being offered by the defendant in support of its plea in abatement. It was the insistence of the defendant that Law was an independent contractor and was not such an agent or representative of the defendant as would make service of process on him service upon the defendant, the defendant insisting that he was not such an agent or representative of the Company as was contemplated in Section 8669 of the 1932 Code. On the other hand, it is

the insistence of the plaintiff that the defendant maintained an office in Jackson, Tennessee, and that it was a corporation chartered under the laws of the State of Delaware, but doing business in Madison County, Tennessee, and that Law was an agent or clerk employed therein and was such a representative of the defendant that service of process upon him was service of process upon the defendant under the provisions of Section 8669 of the 1932 Code. As to the relationship between Malcolm Law and the defendant, the proof in the cause from the testimony introduced shows in substance the following:

That Malcolm Law was a young man twenty-four years of age, lives in Jackson, Tennessee, is a student at Lambuth College and is a newspaper reporter, writing for the Commercial Appeal, and he states, in reply to a question:

"Q. 8. Are you employed in any way by the Memphis Publishing Company, or the Commercial Appeal? A. Yes; I supply the Commercial Appeal with news from Jackson and Madison County."

He stated that he had worked for the Commercial Appeal for about seven months prior to the filing of the suit and that he had, prior to that time, worked for the Jackson Sun for six months and for the Nashville Tennessean for a little over a year. When asked to explain how he was employed by the defendant and how paid and how much time he spent on it, he replied as follows:

"A. It would vary on the job, according to the amount of news there is. Of course, generally speaking, I am in the office by noon each day, and I make a spin around Jackson; that is, looking for news; I write that news and send it in to the paper and I am out by seven o'clock,

I suppose, if nothing is happening at night; otherwise I might work at night some. Now, what was the other part of your question?

"Q. 17. How are you paid for your work,—is it by salary or how? A. I am paid—I have a guarantee of a hundred dollars a month, plus a commission, you might say, for the total number of inches with a minimum, and I also get paid for each picture I send in that is published.

"Q. 18. Are you what they call 'on the string' in newspaper language? A. Yes, sir, that is the term.

"Q. 19. What does 'on the string' mean? A. It simply means you write—in my case once a month you take all the articles you write during the month and glue them together in a string; it is measured and you are paid according to how much there is in that string.

Q.. 20. In other words, you send in any article you want to and they publish whatever they want to out of the articles you send in? A. That is right.

"Q. 21. And you are paid so much an inch? A. Yes sir.

"Q. 2. Paid in accordance with the space taken up by the article you send in? A. Yes, sir.

"Q. 23. You send them all the pictures you want to and if they use them they give you one dollar per picture? A. That is right.

"Q. 24. And your compensation is, in fact, on that basis, with a guaranteed minimum of a hundred dollars a month? A. That is right."

It was the insistence of the plaintiff that the Commercial Appeal maintained an office in Jackson, Tennessee, and the proof shows that the Commercial Appeal paid rent for and had an office at 211 East Baltimore in Jackson, Tennessee, and that sign on said office was "The

Commercial Appeal News Bureau,'' and that rent on this office was paid by the defendant, and the equipment in the office belonged to the defendant, consisting of a desk and typewriter and some other furniture, and that the office was listed in the telephone directory, ''Commercial Appeal News Bureau, 211 E. Baltimore-788.'' That the sign appeared on the door of the office, ''The Commercial Appeal, 'The South's Greatest Newspaper,' '' and likewise, there was a small sign, ''Malcolm Law, Jackson Tennessee Bureau, office hours 12 noon to 7 P. M. Home phone: 135. Can be contacted during morning hours at Lambuth College.'' The proof shows also that the defendant would pay for the telephone and pay for taxi hire when necessary to be used, and that Law kept a record of his expenses and sent the bill in monthly to the defendant, and then it was paid, the expenses including taxi service, postage and janitor's fee. Mr. Law was paid by the inch for material sent in and with a guarantee of one hundred dollars per month. No Social Security was paid, nor any withholding tax. His contract was not for any definite term, nor was there any control exercised over the territory he would cover or any specified duties or control of his time. Proof showed he had no authority whatever over any of the operations of the paper, and his duty alone was the securing of news and transmitting the same to the defendant, for which he was paid on an inch basis, with a minimum of one hundred dollars per month. He was taking a regular course at Lambuth College under the G. I. Bill of Rights and was a Senior. He had no authority to make any contract or agreement or to sell advertisements or to deliver papers. His sole duty and his sole obligation to the defendant was the securing of

news and the transmission of the same. The defendant had a right to receive or reject items sent, and the proof does not show that it undertook in any manner to control the method used by him, in the securing of the news, nor did it in any manner undertake to control the use of his time or the manner in which he secured the news. Under the proof he would be strictly classified as a reporter, with no managerial duties or no other authority than to interview, secure the news and transmit it. He was asked this question: .

"Q. 57. Do you have authority at all to sell advertisements for the paper? A. No; I am expressly forbidden to do so.

"Q. 58. Do you have any authority whatever to sell newspapers? A. No sir.

"Q. 59. Do you have any right or authority to make any sort of contract or agreement of any kind on behalf of the Memphis Publishing Company? A. No sir.

"Q. 60. Do you have anything to do with the policy of the newspaper,—I mean . in the editorial or news policy? A. No, sir.

"Q. 61. Are you consulted about such matters? A. No, sir."

Mr. Rutland, Tri-States Editor of the Commerical Appeal, stated that Law was under his department and that he was a correspondent at Jackson for the paper and that he was paid so much per inch at the rate of fourteen cents an inch and that he had a guarantee of one hundred dollars per month. That there was no obligation on the part of the paper to accept what he sent in and that he received one dollar for all pictures accepted. That he was prohibited from performing any other service for the paper, other than as local cor-

respondent, and that he was not on the Social Security list of the paper. That he was paid monthly, whereas, other employees of the paper are paid weekly. That he had no authority to employ any one. On cross examination the witness stated that Law would have no authority at all, other than what would be given him. He stated that the office of the News Bureau was at 211 Baltimore Street in Jackson, Tennessee.

It was the theory and insistence of plaintiff that Law was an agent and servant of the Memphis Publishing Company, and that he was such an agent at Jackson, Tennessee, and that he was such a representative or agent as would be included in Section 8669 of the 1932 Code as follows: ''When a corporation, business trust, or any person has an office or agency, or resident director, in any county other than that in which the chief officer or principal resides, the service of process may be made on any agent or clerk employed therein in all actions brought in such county against same growing out of the business of , or connected with, said principal's business; but this section shall apply only to cases where the suit is brought in such counties in which such agency, resident director, or office is located.''

And that the defendant was maintaining such an office in Jackson, Tennessee, as is provided by this section of the Code.

It is the insistence of the defendant that Law was an independent contractor and would not come within the provisions of said Section 8669 or any other provisions which would make him such a representative as service of process on him would be service upon the defendant.

As to the first assignment of error, namely, that ''the Honorable Court erred in refusing to grant H. W. Wilson

a new trial and in directing a verdict for the defendant, Memphis Publishing Company, for the reason that there were issues of fact to be determined by the jury," the Court is of the opinion that there was no dispute as to the facts, and there was no dispute as to the evidence, and that where the evidence is uncontradicted, it becomes a question of law for the Court.

In plaintiff's reply brief to defendant's brief, considerable discussion is had as to the witnesses being partial and prejudiced witnesses and cites and relies on the case of Poole v. First National Bank of Smyrna, 29 Tenn. App. 327, 196 S. W. (2d) 563. It is the Court's opinion that this case is different from the case at bar as the evidence there considered was officers of the bank and likewise stockholders who were directly and personally interested; whereas, in the case at bar the two testifying witnesses are merely employees. The credibility of the witnesses was not questioned.

In Grace v. Louisville & Nashville Railroad Company, 19 Tenn. App. 382, 89 S. W. (2d) 354, the Court says:

" 'Independent contractor' is one who, exercising independent employment, contracts to do a piece of work according to his own methods without being subject to control by employer except as to result of work; and ultimate test is whether employer has right of control, irrespective of use of term 'independent contractor' in contract.

"Employer's reservation of control of result of work does not make person hired mere servant, as distinguished from independent contractor, if person hired has control of details and methods of performance."

The court, further speaking in this case and quoting from an opinion in Odom v. Sanford & Treadway, 156

Tenn. 202, 299 S. W. 1045, which likewise is a quotation from 14 R. C. L. 68, says: " 'As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control,—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of Master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof; where the employee represents the will of the employer as to the result of the work but not as to the means or manner of accomplishment, he is an independent contractor. Thus a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the employee as to the details or methods of doing the work, but is only that the employer may see that the contract is carried out according to the plans.' "

In 63 App. D. C. 213, 71 F. (2d) 223, 224, is reported the case of Layne v. Tribune Company, in which a suit was brought against the Tribune Company for an article published in the Daily Tribune, which publication was made in Chicago, Illinois. The District of Columbia has the following section, being Title 24, Section 373, of the District Code 1929, which provides: "In actions

against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and cannot be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court.''

The evidence in this case discloses that the Tribune Company maintained an office in Washington in charge of a man by the name of Henning, upon whom service of process was made. That in the office were other reporters and telegraph operators, all employed by the defendant company. That the company maintained a leased wire from its Washington office to Chicago. The business of Henning and his associates was to collect news in Washington and send it to Chicago. The news articles were there examined and used or discarded by defendant company and supplied to other newspapers. The defendant company maintained the telephone in the Washington office, and Henning had authority to purchase supplies for the office, employ additional help, all of which were put in an expense account and paid from the Chicago office. Henning and the other employees' salaries were paid direct from the Chicago office; likewise, the rent and the furnishings were paid for from the Chicago office. It further appeared that the defendant company made no contracts of any nature in the District of Columbia; that no money was received of any of the employees for contracts entered into, either for the sale of papers or for advertisements, and no employee was authorized to enter into any contract with any other

corporations outside of the State of Illinois. The Court held that the corporation was not doing business in the District of Columbia and that service of process on Henning was not service of process on the defendant company. In the decision the Court said in part as follows: "It has never been held that the mere collection of news on Washington and their transmission to a paper published outside of the District of Columbia constituted doing business in the District within the terms of the statute."

And in citing from the case of Neely v. Philadelphia Inquirer Company, 61 App. D. C. 334, 62 F. (2d) 873, the Court said: " 'But we think the mere collection of news material here for use in subsequent publication elsewhere, in the manner and extent shown in this case, is not a doing of business here, within the meaning of the statute.' "

It is true that this case is a foreign corporation with its principal place of business in a foreign State; whereas, in the instant case the defendant's place of business was within the State, but the Court has held that the application of the statute above quoted applies to domestic as well as foreign corporations. Burnett v. Simmons, 175 Tenn. 422, 135 S. W. (2d) 452.

In the case of Howell v. Shepherd, 29 Tenn. App. 375, 196 S. W. (2d) 849, in discussing the question of master and servant and principal and agent, the Court said: "A principal factor in determining whether relationship between parties is that of principal and agent or master and servant, on the one hand, and employer and independent contractor, on the other, is the character of control reserved by the employer over the doing of the work, and if he reserves the right to control or direct the time,

place, methods and means by which work is being done, relationship is that of 'principal and agent' or 'master and servant,' but if he is concerned with results only and employee is allowed to perform work in manner he pleases as to time, place, means and methods, and is accountable only for results, he is an independent contractor'.''

In the case of Johnson Freight Lines v. Davis, 170 Tenn. 177, 93 S. W. (2d) 637, the Court applied Section 8669 of the Code to the facts in the case decided therein.

In the case of Sitz v. Bryant, 184 Tenn. 600, 201 S. W. (2d) 985, 987, Judge Gailor, speaking for the Court, says: ''We think it clear from the record that the Company exercised no control or supervision over the details of Complainant's operations and that the Company controlled only the result. This is the essential test: 'The right to control the ''result'' is not determinative of the existence of the relation of master and servant, but the actual control of means and method is.' ''

Other cases bearing out this definition of independent contractor and master and servant are reported in Income Life Insurance v. Mitchell, 168 Tenn. 471, 79 S. W. (2d) 572; Copeland v. Cherry, 20 Tenn. App. 122, 127, 95 S. W. (2d) 1275; Powell v. Virginia Construction Company, 88 Tenn. 692, 13 S. W. 691, 17 Am. St. Rep. 925; Gulf Refining Company v. Huffman & Weakley, 155 Tenn. 580, 297 S. W. 199.

In 31 C. J. 473, it is said: ''It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases. As employees are independent contractors, each case must depend on its own facts, and ordinarily no one feature of the relationship is determinative, but all must

be considered together. Ordinarily, the question is one of fact." See also 42 C. J. S., Independent, p. 638.

No Social Security was paid, and in the case of Tennessee Valley Appliances v. Rowden, 24 Tenn. App. 487, 146 S. W. (2d) 845, the Court said: "Fact that employer paid social security tax on salary of one employed as general collector was a circumstance indicative of existence of master-servant relationship, because Social Security Act covers only employees, and the term 'employee' does not cover an independent contractor." The fact that no Social Security or withholding tax was paid is a circumstance to be considered in this matter.

"There is a distinction between the reservation of the right to control as to results and the right to control as to the means and methods by which the work shall be accomplished. The right to control the results does not establish the master and servant relationship." Texas Co. v. Bryant, 178 Tenn. 1, 152 S. W. (2d) 627, 631, citing Phillips v. Tennessee Eastman Corporation, 160 Tenn. 538, 26 S. W. (2d) 1051.

Applying this rule to the case at bar, the proof shows that Law was a part-time student at Lambuth College, working in the afternoon as a reporter, occupying an office, on which the rent was paid by the defendant, and listing the telephone in defendant's name. He was paid by the inch, or, as was expressed by the witnesses, "on the string" method, with a guarantee of one hundred dollars per month. No Social Security was paid on him nor any withholding tax. He was not supervised as to when he should write, where he should go to get his news, nor was there any supervision of the manner in which he acquired the news and no exercise of control as to the means and methods by which the work was to be ac-

complished, the defendant controlling only the results and imposing no requirements as to the means and methods by which the news was collected. He could work one hour or five hours; he could work any street he desired. He made no time reports and was paid only for the accepted work that he sent in.

From all of this, considering the case on the proof, it is the opinion of the Court that Malcolm Law was an independent contractor, in view of the above decisions, with the rule applied that the defendant only controlled the results of his activity with no control whatever over the methods or means by which the results were produced. We think that the defendant has met the burden of proof imposed upon it, and we think the Court was correct in granting a directed verdict in favor of the Memphis Publishing Company, and assignments of error two and three are overruled, and the action of the Court in granting said directed verdict is by this Court sustained.

The result is that the suit is dismissed at the cost of the defendant.

Baptist and Swepston, JJ., concur.