IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2004 Session

## SODEXHO MANAGEMENT, INC., v. RUTH E. JOHNSON

**Appeal from the Chancery Court for Davidson County**
**No. 98-3318-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2003-00660-COA-R3-CV- Filed November 8, 2004**

---

This dispute arises from the assessment of the "contractor's use tax" against Sodexho Management, Inc. for its use of personal property owned and utilities provided by David Lipscomb University. Sodexho used the university's property to provide food service for the tax-exempt university. The Commissioner assessed a use tax on the value of the personal property and utilities provided by the university because the university, as an exempt organization, had not previously paid sales tax. The pivotal issue is whether Sodexho operated the food service as an agent of the tax exempt university or as an independent contractor. The Chancellor held that Sodexho was an agent of the university and that no use tax was owed. We reverse, finding that Sodexho did not carry its burden of proof to establish that it was an agent of the university and thus is liable for the use tax.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Wyla M. Posey, Assistant Attorney General, for the appellant, Ruth E. Johnson, Commissioner of Revenue, State of Tennessee.

Patricia Head Moskal and Joseph W. Gibbs, Nashville, Tennessee, for the appellee, Sodexho Management, Inc.

### OPINION

The issue is whether Sodexho Management, Inc., (Sodexho) (formerly Sodexho-Marriott Management Services), a for-profit corporation, operated the food service operations of the tax-exempt, not-for-profit David Lipscomb University ("the university") as an independent contractor or as an agent. If Sodexho operated the food service operations of the university as an independent contractor, then Sodexho owes use tax on the personal property and utilities provided by the

university that Sodexho used in the performance of its contracts. If Sodexho acted as an agent it does not owe use tax because Sodexho would be considered the same entity as the university, and thus – like the university – would be tax-exempt.

The tax at issue is the "use tax" (also referred to as the "contractor's use tax").[1] Tenn. Code Ann. § 67-6-209(b). The use tax was assessed against Sodexho – not the university – due to Sodexho's use of the university's personal property in the performance of its food services. The tax in Tenn. Code Ann. § 67-6-209 is a tax on the *contractor's use* of the tangible personal property. The statute provides that contractors are the consumers of the items of tangible personal property they use in the performance of their contracts. The use at issue is considered a separate and distinct taxable activity. *United States v. Boyd*, 378 U.S. 39, 44 (1964)(when a contractor uses property for its own private ends, the use tax is owed, regardless of whether its customer is a tax-exempt entity). The two categories of use tax assessed against Sodexho at issue are (1) customer provided assets and (2) customer provided expenses (utilities).

"Customer Provided Assets" are assets used by Sodexho in the operation of the university's food service. The assessment does not include assets that were installed as improvements to real property or fixed assets. It does however include assets that the university provided to Sodexho that did not become part of the real property, such as pots, pans and tools of the trade. Tenn. Code Ann. § 67-6-209(b) and § 67-6-102(31).

"Customer Provided Expenses" are utilities provided by the university that Sodexho used in the operation of the university's food service. The utilities assessed are considered to be tangible personal property, including electricity, natural or artificial gas and water. Tenn. Code Ann. § 67-6-209(b) and § 67-6-102(31).

Customer provided assets and customer provided expenses are subject to the contractor's use tax if no sales or use tax was previously paid before being used by Sodexho.[2] Tenn. Code Ann. § 67-6-209(b)(Supp. 1990). The use of tangible personal property in the performance of a contract is taxable "whether the title to such property be in the contractor, subcontractor, contractee, subcontractee, or any other person, or whether the title holder of such property would be subject to pay the sales or use tax." Tenn. Code Ann. § 67-6-209(b). That statute provides:

> (b) Where a contractor or subcontractor . . . uses tangible personal property in the performance of his contract, or to fulfill contract or subcontract obligations, whether the title to such property be in the contractor, subcontractor, contractee, subcontractee, or any other person, or whether the title holder of such property would be subject to pay the sales or use tax, . . . such contractor or subcontractor shall pay

---

[1] Though a small amount of sales tax was assessed to Sodexho for the sale of banners at the university location, sales tax is not an issue. A total of $108.00 was estimated for these sales and was assessed to Sodexho. The parties stipulated that only the use tax assessed was in dispute. Thus only the use tax is at issue.

[2] It is undisputed that sales tax was not previously paid.

a tax at the rate prescribed by § 67-6-203 measured by the purchase price of such property, unless such property has been previously subjected to a sales or use tax, and the tax due thereon has been paid.

The Commissioner bears the initial burden of proving that Sodexho is subject to the use tax at issue. *See Prodigy Services Corp. v. Johnson*, 125 S.W.3d 413, 416 (Tenn. Ct. App. 2003). If the Commissioner makes out such a case, Sodexho then bears the burden of proving that it is exempt, *see Jack Daniels Distillery, Lem Motlow, Prop. v. Johnson*, 740 S.W.2d 413, 416 (Tenn. 1987), and there is a presumption against exemptions. *See Kingsport Publishing Corp. v. Olsen*, 667 S.W.2d 745, 746 (Tenn. 1984).

It is undisputed that the university is an exempt entity and that no tax would be owing if the university provided the food service at issue. Moreover, it is undisputed that Sodexho would also be exempt and that no tax would be owing if Sodexho's use of the university's personal property was in the capacity as the agent or servant of the university, as distinguished from that of an independent contractor, because an agent (or contractor) steps into the shoes of its tax-exempt client when it is a servant of that client. *U.S. v. Boyd*, 378 U.S. at 44-48; *Gehl Corp. v. Johnson*, 991 S.W.2d 246 (Tenn. Ct. App. 1998), *perm. app. den'd*, (1999). For Sodexho to be subject to the use tax assessment, what matters is that Sodexho used the property in the performance of its food service contract for its business purposes in its capacity as an independent contractor, not as an agent or servant.

An element of the agency relationship is that the object of the contract be for the benefit of the principal. The test is whether the principal has a right to control the conduct of the agent with respect to matters entrusted to the agent. The "right of control is the primary or essential test of an agency relationship without which no agency exists. [citations omitted] The same standard applies when the agency relationship is implied: the right of the principal to control the agent's conduct or the actual exercise of such control is the essential test." *Nidiffer v. Clinchfield RR. Co.*, 600 S.W.2d 242, 245 (Tenn. Ct. App. 1980). The distinctions between an independent contractor and an agent are not always easy to determine, and there is no uniform rule by which they may be differentiated. *Carbide & Carbon Chemical Corp. v. Carson*, 239 S.W.2d 27, 31 (Tenn. 1951). Our Supreme Court discussed the differences between the two and stated:

> Generally the distinction between the relation of principal and agent and employer and independent contractor is based on the extent of the control exercised over the employee in the performance of his work, he being an independent contractor if the will of the employer is represented only by the result, but an agent where the employer's will is represented by the means as well as the result.

*United States v. Boyd*, 363 S.W.2d 193, 197 (Tenn. 1962), *aff'd*, 378 U.S. 39 (1964) (citing, *Carbide*, 239 S.W.2d at 31; 2 C.J.S., Agency, § 2, p. 1027).

Courts of this state have frequently analyzed the type and degree of control principals and employers exert over agents and servants. Years ago our supreme court concluded that, as a practical matter, every contract for work to be done reserves to the principal or employer a certain degree of control because some degree of control is necessary to assure that the work is performed according expectations or specifications. *Odom v. Sanford & Treadway*, 299 S.W. 1045, 1046 (Tenn. 1927).

> The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also the means and the manner of the performance thereof; where the employee represents the will of the employer as to the result of the work but not as to the means or manner of accomplishment, he is an independent contractor. Thus a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the employee as to the details or methods of doing the work, but is only that the employer may see that the contract is carried out according to the plans.

*Odom*, 299 S.W. at 1046, quoting 14 R.C.L. 67; *See also Wilson v. Memphis Pub. Co.,* 231 S.W.2d 404 (Tenn. Ct. App. 1950) *cert. den'd*, (1950); *Grace v. Louisville & N.R. Co.,* 89 S.W.2d 354 (Tenn. Ct. App. 1935), *cert. den'd*, (1936).

The factor that distinguishes contractors from agents is that the contractor is using the property "in connection with its own commercial activities." *Boyd,* at 45 (quoting *United States v. Township of Muskegon*, 355 U.S. 484, 486 (1958)). The United States Supreme Court further commented that the fact the property was being used for the principal's benefit was irrelevant for that is true in virtually every management contract. *United States v. New Mexico*, 455 U.S. 720, 739 (1982). The *New Mexico* court observed that the fact federal property involved was being used for the Government's benefit was irrelevant, what mattered was the fact that the contractors remained distinct entities pursuing "private ends" and their actions remained "commercial activities carried on for profit." *New Mexico*, 455 U.S. at 739, quoting *Boyd*, 378 U.S. at 44-45. When dealing with issues similar to those presented here, this court found the key factors to be the principal's "right to control" and the "extent of control" the principal actually exerted. *See Edwin B. Raskin Co., v. Ruth E. Johnson*, No.01-A-01-9708-CH-00392, 1998 WL 242605 (May 15, 1998 Tenn. Ct. App.).

Our analysis starts with the agreement (Agreement) the university entered into with Marriott Corporation (Sodexho) for the management and operation of the university's food services.[3] The stated purpose of the Agreement was to retain Sodexho to "manage and operate" the university's food service operations.[4] The Agreement identified the parties' relationship as one of agency:

> 2.1 <u>Agency Relationship</u>. University grants [Sodexho], as agent for University, the exclusive right to manage and operate the Food Service. To accommodate University and to facilitate accounting and control of inventories to be utilized by [Sodexho], [Sodexho] shall purchase food and supplies in its name, as agent for University, and shall pay the invoices.

That paragraph further read, "As principal, [the university] may supervise [Sodexho's] daily operation of the Food Service, including working conditions for Food Service employees and the safety, sanitation, and maintenance of the Food Service facilities."

Sodexho identified certain provisions in the Agreement that it argues are indicative of the university's right to control the food services operations. The provisions Sodexho emphasized include the following:

- <u>Right to Regulate Operations</u>. The university reserved the right to make reasonable regulations with regard to the food service operations and [Sodexho][5] was required to comply within a reasonable time. (¶2.1)[6]

- <u>Right of Access</u>. University representatives had access to the food service facilities at all reasonable times. (¶2.1)

- <u>Locations/Meal Plans</u>. [Sodexho] was required to provide Food Service for the university's resident dining patrons at nine specified locations in accordance with the meal plans[7] selected by the university. (¶¶3.1, 3.2)

---

[3] The food services were provided on the university campus and at the university's high school, middle school and elementary school.

[4] The Agreement acknowledged that the university's food service operation "is maintained as an integral part of the University's educational activities solely for the use of students, faculty, staff, employees, invited guests and others designated by University."

[5] The Agreement and Sodexho's brief identified the party as a Marriott, not Sodexho.

[6] Parenthetical references are to the paragraphs in the Agreement.

[7] All meal plans were for seven days a week. Plan A included 21 meals per week, plan B included 15 meals per week, and plan C included 10 meals per week.

- Seconds policy and Serving Style. [Sodexho] was required to serve all meals cafeteria style. Most meals included unlimited servings of food and beverages. (¶¶3.3, 3.4)

- Menus and Prices. All menus and prices were to be recommended by [Sodexho], but were subject to university approval. (¶3.5)

- Locations and Prices. [Sodexho] was required to provide retail sales at two specified locations, with prices to be determined by the mutual agreement. (¶¶4.1, 4.2)

- Management Non-hire. The parties agreed that they would not hire the other's management employees for specified periods following termination of the employee or the Agreement. (¶5.4)

- Office Facilities. The university owned and provided office facilities, including equipment and furniture, at no cost to [Sodexho]. (¶6.3)

- Cleaning/Sanitation. [Sodexho] was responsible for the usual and customary cleaning of food service areas. The university was responsible for cleaning window, walls, ceilings, drapes, fixtures, etc. (¶6.6)

- Maintenance. The university was required to furnish its maintenance staff to maintain food service facilities and equipment at its cost, including labor and supplies. (¶6.7)

- Utilities. The university was responsible for the cost/purchase of utilities. (¶6.9)

- Working Capital. The university deposited $85,000 in October of each year to offset [Sodexho's] operating expenses. Any unused portion was to be credited to the university at the end of the year. (¶7.1)

The Commissioner countered asserting that Sodexho was not a mere agent of the university for it bore the risk of loss from its food services operations, any profit it made was not paid to the university, rather Sodexho retained the profits, Sodexho not only had the right to control the means and methods of its operations, namely ordering, preparing, and serving food and managing the process, Sodexho indeed did control the means and methods of its operations, that Sodexho employed and paid "its" workers to conduct the food service operations, and Sodexho had its own chain of command for management of its food service operations and the chain of command did not include the university.

The Agreement is a relevant factor; however, it is not the only relevant factor. The conduct of the parties is also relevant. *Raskin*, 1998 WL 242605, at * 2. The issue in *Raskin* was whether the private manager (Raskin) of a city-owned golf course was entitled to the city's exemption from the use tax. Here, the university had the right to control many aspects of Sodexho's operations; however, the mere existence of the right to control certain aspects of another's operations is not determinative of the agency issue. *See Raskin*, 1998 WL 242605, at * 2. As pronounced in *Boyd* and *Raskin*, our determination should be based on the extent of control exercised over the agent/contractor including whether the principal retained and exercised control over the means of accomplishing the result as distinguished from controlling the result but not the means. *See Boyd*, 363 S.W.2d at 197; *Raskin*, 1998 WL 242605, at * 2. A degree of control is not determinative for every contract for work reserves to the employer/principal a certain degree of control. *Odom*, 299 S.W. at 1046. The control of the work reserved to the principal which makes the agent a mere servant is a control not only of the result of the work but of the means and the manner of the performance. *Id.*, at 1046. Where the agent represents the will of the principal as to the result of the work but not as to the means or manner of accomplishing the work, it is an independent contractor. *Id.*, at 1046.

Here, the chancellor rendered two memorandum opinions. She made numerous findings of fact, the bulk of which are stated in the first opinion. We believe the more significant findings to be the following:

- The relationship was "more a result-oriented one in which [Sodexho] was retained to use its specialized expertise to efficiently and with quality manage and operate the food services" and "less a relationship where [the university] controlled the plaintiff's duties."

- The university was "looking for the end result and that the plaintiff acted as an outsourcing contractor," that the university had "tried unsuccessfully to operate the food services operation," that it "wanted its food services to be more efficient and provide better quality for the students."[8]

- Sodexho was "left to its own devices within its field of expertise."

- The Agreement provided that Sodexho had the "exclusive right to manage and operate the Food Service."

---

[8]The chancellor specifically credited the testimony of Carl McKelvey, David Mayo and Michelle Bagley with this finding. The chancellor cited the testimony of Mr. McKelvey, the university's vice president of campus affairs, who characterized the relationship as "an out source contract" and that the director of business operations at the university -- who performed quality control and monitored Sodexho's food services operations for the university -- David Mayo also characterized it as one of "outsourcing" and Michelle Bagley, food services director for Sodexho, testified that what the university was looking for was an "end result."

- The proof showed that Sodexho "controlled cooking and food preparation," that a primary part of the task of food preparation and service was the personnel to prepare and serve the food and training personnel, which Sodexho was responsible for, and that Sodexho "controlled the personnel of the food services operation."

- The Agreement held Sodexho "solely responsible for the employees on its payroll" and that Sodexho made the decisions to hire and fire non-management employees and though Mr. Mayo, director of business operations for the university, was assigned to monitor Sodexho's food services operation, he had no authority to hire or fire Sodexho's employees.[9]

In the first memorandum opinion, the chancellor reached the legal conclusion that Sodexho had failed to prove that it was the university's agent for purposes of the contractor's use tax. On reconsideration, however, the chancellor reversed her ruling by concluding that she had erroneously compared the facts at issue with those in the Erlanger Hospital dispute[10] and that she should not have deemed as irrelevant specifications for the types of food or prices and facts such as where the food was served and the hours of operation. Though the chancellor changed her opinion on whether Sodexho was the university's agent, she did not rescind her findings of fact in the first memorandum opinion. The chancellor stated that she should have considered others factors as more relevant and should have placed less emphasis on the differences with the Erlanger Hospital dispute. Thus, they stand as the chancellor's findings of fact, which are entitled to our review with a presumption that the factual findings are correct, absent a showing that the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *see Berryhill v. Rhodes*, 21 S.W.3d 188, 190 (Tenn. 2000).

We agree with the part of the chancellor's second opinion wherein she determined that less emphasis should have been placed on the differences with the Erlanger Hospital agreement and that time and place were relevant factors but we differ with the significance the chancellor placed on the latter. Time and place are relevant when considering agency; however, all such agreements are fact intensive and one of the pertinent facts here is that the enterprise at issue is a food service operation. Thus, it is less significant that the locations of the food service operations were established in the

[9]The chancellor found there were two personnel issues involving interaction between a Sodexho employee and students and an alleged theft, where the university was involved in termination of the employee; nevertheless, she found that, these incidents were not indicative of an exercise of control over Sodexho's personnel. However, the chancellor also found that Sodexho "hired, fired, paid salary and benefits and trained food services employees and that the plaintiff controlled how the food was prepared."

[10]Sodexho commenced this action seeking a refund of use tax assessed on its use of equipment and utilities in connection with its management of food services for Erlanger Hospital in Chattanooga and David Lipscomb University in Nashville. Initially the chancellor held in favor of Sodexho concerning Erlanger but in favor of the Commissioner concerning the university. On reconsideration, the chancellor reversed herself stating that she "erroneously arrived at its conclusion that [Sodexho] did not prove agency with respect to the [university] contract because the proof on that contract was not as ponderous as the proof on the Erlanger contract." The Commissioner only appealed the ruling concerning the university, not Erlanger.

agreement because most food service operations are stationery. It was also less significant that the hours of operation were established in the agreement for food service operations in schools have customary hours of operation. We also find the fact that the university controlled the type of food relevant but not overly significant because the requirement that Sodexho provide cafeteria style food or another type of food is more a control of the result than the means or manner of operation.[11] We therefore agree with the chancellor that these are relevant factors but find their relevance to be less significant.

We now return to the *Raskin* opinion for the facts there and here are similar but we do not find them to be "on all fours" as Sodexho characterized them in its brief. Upon examination of the contractual provisions and the course of dealings between Raskin and the City of Hendersonville, it is apparent that the city had more control and exerted more control than the university had or exerted. For example, all of Raskin's net operating profits were paid over to the city while Sodexho retained the operating net income and only paid the university a small percentage of its profits; Raskin was paid a guaranteed minimum annual fee of $40,000, assuring Raskin of being compensated for its services while Sodexho bore the risk of loss; the proceeds of the golf course operation belonged to the city and Raskin's bank accounts were accessible to the city at all times while the proceeds of the food service operation belonged to Sodexho and the university merely had the right to audit the accounts; and Raskin's personnel policies were subject to the city's approval while Sodexho's employees were only subject to the university's standard of conduct while on the campus.[12]

Making the determination that Sodexho is an independent contractor or an agent is certainly not easy. This is due in part to the fact that such determinations are fact intensive and there is no uniform rule by which they may be distinguished. *Carbide & Carbon Chemical Corp. v. Carson*, 239 S.W.2d 27, 31 (Tenn. 1951). "Generally the distinction between the relation of principal and agent and employer and independent contractor is based on the extent of the control exercised over the employee in the performance of his work, he being an independent contractor if the will of the employer is represented only by the result, but an agent where the employer's will is represented by the means as well as the result." *Boyd*, 363 S.W.2d 193, 197. A person employed to perform certain work is not necessarily a servant because the contract provides that the work is subject to the approval of the employer. "Such a provision is not an assumption by the employer of the right to control . . . the details or methods of doing the work, but is only that the employer may see that the contract is carried out according to the plans." *Odom*, 299 S.W. at 1046 (quoting 14 R.C.L. 68).

---

[11]An analogous example would be that of a principal requiring a contractor to construct a road and requiring that it be paved with asphalt instead of concrete.

[12]John Sobrero, former district manager for Sodexho, testified that Sodexho employees were subject to the university's standards of conduct while they were on the campus. They were not subject to personnel policies of the university.

In *Raskin*, the court presented the issue before it as follows: "If Raskin is merely an agent, the City is operating the golf course through Raskin's agency; if Raskin is an independent contractor, it is operating the golf course as an independent entity, and the operation is not the City's." *Raskin,* at *2. Having examined not only the Agreement but also the conduct of the university and Sodexho, we are unable to conclude that the university was operating the food service operations, to the contrary, Sodexho was. Our conclusion is based on the fact that the evidence does not preponderate against the chancellor's findings of fact set forth in the first memorandum opinion and the fact that we respectfully disagree with the chancellor's legal conclusion as stated in the second and final memorandum opinion. We have reached the same conclusion as did the chancellor in the first memorandum opinion, that Sodexho failed to carry its burden of proof to establish that it was the agent of the university. Specifically, we have concluded that the Agreement and the control exerted by the university was results oriented and did not constitute sufficient control over the means and methods of Sodexho's food service operations to render Sodexho an agent of the university for purposes of the exemption. Thus, Sodexho is not entitled to the tax exempt status of the university and is liable for the contractor's use tax pursuant to Tenn. Code Ann. § 67-6-209(b) as assessed by the Commissioner.

This matter is remanded to the trial court for further proceedings consistent with this opinion. Costs are assessed against Sodexho Management, Inc.

_____
FRANK G. CLEMENT, JR., JUDGE