# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### May 9, 2013 Session

## AOL, INC. (SUCCESSOR TO AMERICA ONLINE, INC.), ON ITS OWN BEHALF AND AS ASSIGNEE OF SPRINT COMMUNICATIONS COMPANY, L. P., AND SPRINT COMMUNICATIONS COMPANY, L. P. v. RICHARD H. ROBERTS, IN HIS CAPACITY AS COMMISSIONER OF REVENUE FOR THE STATE OF TENNESSEE

### Appeal from the Chancery Court for Davidson County
### No. 052337IV, 063097IV    Russell T. Perkins, Chancellor

---

### No. M2012-01937-COA-R3-CV - Filed August 12, 2013

---

Taxpayers appeal from the trial court's grant of summary judgment in favor of the Commissioner and dismissal of the taxpayers' claims for refund of sales taxes paid to the State of Tennessee. Holding that the service at issue was not excluded from the definition of taxable telecommunications as a private line service or as an enhanced service, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined. PATRICIA J. COTTRELL, P. J., M. S., not participating.

Patricia Head Moskal and Joseph W. Gibbs, Nashville, Tennessee; and Martin I. Eisenstein, Lewiston, Maine, for the Appellants, AOL, Inc. (successor to America Online, Inc.), on its own behalf and as assignee of Sprint Communications Company, L. P., and Sprint Communications Company, L. P.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Jonathan N. Wike, Senior Counsel, for the Appellee, Richard H. Roberts, in his capacity as Commissioner of Revenue for the State of Tennessee.

**OPINION**

## I. FACTS AND PROCEDURAL HISTORY

This appeal arises out of an action brought by America Online, Inc. ("AOL"), a provider of online services to customers throughout the world, and Sprint Communications Company, L.P. ("Sprint"), a telecommunications service provider, for a refund of taxes collected by the Commissioner of Revenue for the State of Tennessee ("Commissioner") during the years 2000 through 2003. Sprint collected the taxes on AOL's purchase of high-speed data transmission services from Sprint known as port modem management services based on the location of modems in Tennessee and remitted payment to the Tennessee Department of Revenue.[1]

On September 7, 2004, Sprint and AOL ("Plaintiffs") executed a document by which Sprint assigned its claim for a refund of taxes to AOL and gave AOL power of attorney to act on Sprint's behalf. On September 14, 2004 AOL filed a claim with the Department of Revenue for a refund of $979,812 of sales taxes paid between 2000 and 2003. AOL's claim stated in pertinent part:

> Sales tax was paid in error or against the statute or rule for the following reasons: (i) the Services constituted value added network services and therefore are not taxable telecommunications within the meaning of TN[sic] Code Ann. Sect. 67-6-102 and (ii) the Services constitute a private line service and therefore are not taxable telecommunications within the meaning of TN[sic] Code Ann. Sect. 67-6-102.

The Commissioner did not grant or deny the claim, and the claim was deemed denied on March 15, 2005.[2]

On September 14, 2005, AOL, on its own behalf and on behalf of Sprint, filed this action in the Davidson County Chancery Court seeking a refund of the sales taxes. The complaint alleged that the port modem management services sold to AOL by Sprint were not subject to the sales tax because they were not "taxable telecommunications within the meaning of T.C.A. § 67-6-102." On January 26, 2006, Plaintiffs amended their complaint

---

[1] Sales of telecommunication services are subject to sales and use taxes. Tenn. Code Ann. § 67-6-201, et seq.

[2] According to Tenn. Code Ann. § 67-1-1802 (b)(2), if a claim for a refund is not determined within six months following the Commissioner's receipt of the claim then the claim is deemed denied.

to assert that on December 22, 2005 they amended the refund claim which was the basis for the lawsuit and that Sprint had filed a separate refund claim in its own name, both with the Department.[3] On December 20, 2006, AOL and Sprint filed a second lawsuit with respect to the deemed denial of the December 22, 2005 claims. On June 20, 2007, the trial court entered an agreed order consolidating the two cases.

On February 6, 2009, Plaintiffs filed a motion for summary judgment, asserting that "the services provided . . . were 'private line services' and not taxable under Tennessee's statutory definition of 'telecommunications' during the relevant time period." On the same day, the Commissioner filed a cross-motion for summary judgment, arguing that "Plaintiffs are not entitled to a refund of sales tax" because the services at issue "are not exempt from sales tax as 'private line services,' 'protocol conversion' services, or 'value added networks.'"

On August 13, 2012, the trial court entered its order denying Plaintiffs' motion and refund claims and granting summary judgment in favor of the Commissioner. The court stated that:

> The breadth of the [statute's] language . . . makes Sprint's services to AOL includable within the landscape of "telecommunications" because the services involve communications by "electronic transmission of impulses." Secondly, under Tenn. Code Ann. § 67-6-102(a)(32)(B)(2003), telecommunications "includes transmission by or through any media, such as wires, cable . . . or any combination of those or similar media[.]" Consequently, under this language, "telecommunications" could include the services provided by Sprint to AOL. Thirdly, Tenn. Code Ann. § 67-6-102(a)(32)(C)(2003) provides that "telecommunications" includes "all types of telecommunication transmissions," and contains a non-exhaustive list of services, including telephone service.

The court found that although AOL had "exclusivity over [the] portion of the transmission leg" at issue, Sprint provided the "telephone number that the AOL member used" to reach the port modem management system service "via the [public switch telephone network],

---

[3] In the amended complaint, Plaintiffs note that the Commissioner filed a motion to dismiss the complaint on November 18, 2005 (which is not in the record), asserting that AOL was not a taxpayer with respect to the taxes in question and that Sprint's assignment of the refund claim to AOL was ineffective for the purposes of the lawsuit; they state the original claim was amended to "specifically name Sprint" as a claimant and that they filed a new claim to resolve the issue raised in the Commissioner's motion to dismiss of whether AOL had standing to bring the refund claim. The Commissioner did not grant or deny the amended claim or the separate claim filed by Sprint and, consequently, the claims were deemed denied.

which . . . is not exclusively dedicated to AOL traffic." The court concluded that the service provided by Sprint was not a telecommunication service that "entitle[d] [AOL] to exclusive or priority use of a communication channel" within the meaning of the statute. Therefore, because it was "undisputed" that the transmission did not begin at the port modem management system, but began at "AOL's end-user's home computer," the court held that "the private line service exemption does not apply." Plaintiffs appeal.

Plaintiffs contend that Sprint's port modem management service is a "private line service," which does not fit within the statutory definition of a taxable telecommunications service, and is an "enhanced service" that is not "telecommunications."[4] The Commissioner contends that Sprint's service was a taxable telecommunications service within the meaning of the statute; that the "true object" of the Sprint service was communication; that the service was of the type specifically identified as a telecommunication service in *Prodigy Services Corp., Inc. v. Johnson,* 125 S.W.3d 413 (Tenn. Ct. App.); that the service was not excluded from taxation as a "private line service"; and that the presence of "protocol conversion" within Sprint's service did not render that service exempt. The issue before this court is whether the port modem management system is a taxable telecommunications service within the meaning of Tenn. Code Ann. § 67-6-102(32).

## II. STANDARD OF REVIEW

This appeal is from a grant of summary judgment, which is an appropriate vehicle for resolving a case where there is no genuine issue of material fact and a judgment may be rendered as a matter of law. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). In such proceedings, the moving party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. Pro. Rule 56.04. A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010); *Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005). Rather, we review the trial court's decision *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eskin v. Bartee*, 262 S.W.3d 727, 732 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004). In our review, we

---

[4] Plaintiffs asserted in their complaint that the port modem management service was an "enhanced service" and therefore was not a taxable communication; they did not seek summary judgment on this ground. The Commissioner, however, sought summary judgment on both grounds asserted by Plaintiffs that the sales tax did not cover the particular service at issue; the court granted the Commissioner's motion, holding that the services offered were not "enhanced services or value added services."

must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007); *Byrd v. Hall*, 847 S.W.2d 208, 210–11 (Tenn. 1993).

## III. ANALYSIS

Taxation statutes are to be construed liberally in favor of the taxpayer and strictly against the taxing authority. *Covington Pike Toyota, Inc. v. Cardwell, Comm'r of Revenue*, 829 S.W.2d 132, 135 (Tenn. 1992). Statutes providing exemptions from taxation, on the other hand, are to be construed against the taxpayer, and the taxpayer carries the burden of demonstrating an entitlement to an exemption. *Id.*; *see also Sodexho Mgmt. v. Johnson*, 174 S.W.3d 174, 177 (Tenn. Ct. App. 2004). In claiming an exemption or contending that is is excepted from the tax, the taxpayer seeks to avoid the imposition of the tax and, in like manner, the Commissioner seeks to enforce the tax which has been imposed by the Legislature. Consistent with the statutory scheme, therefore, Plaintiffs in this case carry the burden of proving that the sales tax does not apply to the port modem management service and we construe the statute against Plaintiffs.

### A. Private Line Service

The definitions of telecommunication and private line services during the relevant period, 2000-2003, as pertinent to the issues in this appeal, are set out at Tenn. Code Ann. § 67-6-102 (2003), as follows:

> (A) "Telecommunication" means communication by electric or electronic transmission of impulses;
> (B) "Telecommunications" includes transmission by or through any media, such as wires, cables, microwaves, radio waves, light waves, or any combination of those or similar media;
> (C) Except as provided in subdivision (a)(32)(D), "telecommunications" includes, but is not limited to, all types of telecommunication transmissions, such as telephone service, telegraph service, telephone service sold by hotels or motels to their customers or to others, telephone service sold by colleges and universities to their students or to others, telephone service sold by hospitals to their patients or to others, WATS service, paging service, and cable television service sold to customers or to others by hotels or motels;
> (D) "Telecommunications" does not include . . . private line service . . . .

Tenn. Code Ann. § 67-6-102(a)(32)(2003). "Private line service" is defined as "a dedicated line service which is provided to connect two (2) or more specific locations." Tenn. Code Ann. § 67-6-102(a)(24)(2003).[5]

In support of their motion, Plaintiffs relied upon stipulations entered into with the Commissioner, the affidavit and deposition of Geraldine MacDonald, and a Tenn. R. Civ. P. 56.03 statement of undisputed material facts. The Commissioner's response to Plaintiffs' motion, as well as the Commissioner's motion was supported by a Rule 56.03 statement of undisputed material facts, the deposition of Geraldine MacDonald and related exhibits; an exhibit to Plaintiffs' deposition of Andrew W. Dozier, Ph. D., Professor of the Practice Department of Electrical Engineering and Computer Science at Vanderbilt University and his affidavit; the affidavit of Wendy McCormack, a certified paralegal with the Tennessee Attorney General's Office; and the affidavit of Jonathan N. Wike, an Assistant Attorney General in the Tax Division of the Tennessee Attorney General's Office. Plaintiffs responded to the Commissioner's motion, supplementing the materials submitted with their original motion with excerpts from the depositions of Ms. MacDonald and Mr. Dozier, the supplemental affidavit of Ms. MacDonald, and a response to the Commissioner's statement of undisputed facts.

In her affidavit, Ms. MacDonald refers to a diagram referred to as "Exhibit 1"[6] to describe how the port modem management service that is the subject of the sales tax enables an AOL member to access AOL's online service:

14. Exhibit 1 . . . depicts the way in which an AOL member accesses the AOL online service. The first step is that a member's computer would dial, using the public switched telephone network (which is a circuit switched network), a local telephone number (also known as an access number). The public switched telephone network is depicted as PSTN on Exhibit 1. The access number was dedicated for use by AOL and acquired by Sprint for the for the exclusive use of AOL

---

[5] In 2004, the definition of "telecommunications" at Tenn. Code Ann. § 67-6-102(a)(32) was amended by 2004 Tenn. Pub. Acts ch. 782 § 2 by removing "private line service" from the list of services excluded from the definition of "telecommunications" at § 67-6-102(a)(32)(D) and replacing it with the definition of "private communication service" currently codified at § 67-6-102(a)(71). We resolve this appeal by application of the statutory definitions in effect from 2000-2003.

[6] A narrative description of the service Sprint provided to AOL is technically complicated; thus, we include a copy of "Exhibit 1" as an Appendix to this opinion in an effort to clarify Ms. MacDonald's description of the service.

and its members.  I refer to the transmission from the member as either the member's transmission or the information packet.

\* \* \*

16. The next step for an AOL member's access to the AOL online services was that the AOL member's transmission was handed off to Sprint from the public switched telephone network.  Sprint received the member's transmission off of the public switched telephone network, and transported the call on T-1 lines or ISDN PRI lines dedicated to AOL.  The handoff from the public switched telephone network to Sprint and the transmission over the T-1 lines or ISDN PRI lines is depicted as (a) on Exhibit 1.  Component (a) depicts the start of the Sprint port management service ans is part of the service for which Sprint billed AOL.

17. The transmission of the information packet by Sprint over the T-1 lines was to a point of presence ("AOL Dedicated POP"), which is an aggregation of ports or local access nodes, and was maintained by Sprint for the exclusive use of AOL.  The AOL Dedicated POP is depicted as (b) on Exhibit 1.

\* \* \*

19.  At the AOL Dedicated POP, Sprint converted the information packet, which was received at the AOL Dedicated POP in analog form, into a digital format for the purpose of being transmitted, in the TCP/IP protocol, over the Sprint Private Backbone to the AOL Data Centers in Virginia . . . .   In addition, at the AOL Dedicated POP, Sprint consolidated the members' information packets for transmission over the Sprint Private Backbone.

20.  The next step from the AOL Dedicated POP was to route and transmit the information packet in TCP/IP protocol to the servers in an AOL Data Center.  The transmission took place solely over the Sprint Private Backbone dedicated for the exclusive use of AOL.  This is depicted as (c) on Exhibit 1.

21.  In summary, the port management service provided by Sprint and described above consisted of the following three components: (a) provision of dedicated access numbers, handoff to Sprint, and transmission to the AOL Dedicated POP; (b) computer processing applications at the AOL Dedicated POP for the purpose of being able to route and transmit the members' transmissions to the AOL Data Centers;

and (c) Sprint Private Backbone Service over dedicated lines to connect between the AOL Dedicated POP and the AOL Data Centers.

Ms. MacDonald's description of the port modem management service is further supported by her deposition, Mr. Dozier's affidavit and deposition, the Master Agreement between Sprint and AOL, and the parties' statements of undisputed material facts.[7]

Upon reviewing Ms. MacDonald's description of Sprint's port modem management service as well as the entire record, we have determined that the service provided by Sprint did not constitute a private line service within the meaning of the statute. The uncontested facts show that, in addition to transmitting calls over lines dedicated to AOL, Sprint's service included the following functions: acquiring and providing to AOL local telephone numbers—known as access numbers—which enabled AOL's members' computer modems to connect to the local access node; managing the reception of calls from the members' modems; and preparing the data received at the local access node to travel to AOL's Data Centers. During these portions of Sprint's service to AOL, Sprint was not providing a "dedicated line service" connecting two or more specific locations, rather Sprint was providing additional services that enabled the receipt and preparation of the call for transmission. The provision of these additional functions by Sprint took the entire service it provided to AOL outside of the statutory definition of private line service, thereby making the service subject to the sales tax at Tenn. Code Ann. § 67-6-905.

Thus, we affirm the trial court's judgment denying Plaintiffs' motion for summary judgment; for the same reasons we affirm the court's grant of summary judgment to the Commissioner's motion on the issue of whether the services constituted a private line service.

### B. Enhanced Services

We now turn to the Commissioner's motion for summary judgment on the grounds that Sprint's port modem management service was not an "enhanced service" exempt from taxation as telecommunications.

---

[7] The parties disagree as to the nuances of how Sprint's services should be described; however, the disagreement does not amount to a disputed question of material fact. It is the actual service provided that is important, not its characterization by the parties.

Where certain business activity does not "fit clearly and indisputably within the discrete categories contemplated by taxation laws, the courts of this state have developed a method whereby judicial inquiry is made into the 'primary purpose' or 'true object' of the activity or business at issue." *Qualcomm Inc. v. Chumley*, No. M2006-01398-COA-R3-CV, 2007 WL 2827513, at *4–5 (Tenn. Ct. App. Sept. 26, 2007). The true object test has been applied in cases determining the reach of this State's telecommunications tax. *Id.* at *5. "The statutory scheme for telecommunications 'provides that when the totality of the circumstances indicates that telecommunications services . . . are themselves being furnished for consideration, those services are taxable.'" *Bellsouth Telecomms., Inc. v. Johnson*, No. M2005-00865-COA-R3-CV, 2006 WL 3071250, *3 (Tenn. Ct. App. Oct. 27, 2006) (quoting *Equifax Check Servs., Inc. v. Johnson*, No. M1999-00782-COA-R3-CV, 2000 WL 827963, *2 (Tenn. Ct. App. June 27, 2000). Further, this Court has drawn a distinction between "'basic" telecommunication services of the type mentioned in the statute (telephone, telegraph, WATS, paging) and "enhanced" services (information services, conversion services, computer services and Internet access),"[8] holding that the Legislature did not intend for "enhanced services" to come within the statutory definition of taxable telecommunications. *Prodigy Servs. Corp., Inc.*, 125 S.W.3d at 418–19.

Having examined the totality of the circumstances associated with the port modem management service sold to AOL, we hold that the true object of this service was telecommunications. AOL purchased the service in order to connect its members to its Data Centers[9]; in order to make that connection, the transmission services provided by Sprint

---

[8] Citing the distinction between "basic" service and "enhanced" service under federal law, this Court quoted the following definitions of these terms:

> In the FCC's formal terms, basic service is the offering of a "pure transmission capability over a communications path that is virtually transparent in terms of its interaction with customer supplied information." An enhanced service combines basic service with "computer processing applications [that] . . . act on aspects of the subscriber's transmitted information , or provided the subscriber additional, different or restructured information, or involve subscriber interaction with stored information."

*Prodigy Servs. Corp., Inc.*, 125 S.W.3d at 418–19 (quoting *California v. F.C.C.*, 905 F.2d 1217, 1223 n.3 (9th Cir. 1990).

[9] In describing the port modem management service in her affidavit, Ms. MacDonald stated:

> 12. The port modem management service that Sprint provided AOL enabled AOL members to access the AOL online services by means of dial access.
> 13. The port modem management service is an end-to-end service that received

(continued...)

included preparing the data for transmission.[10]  In her deposition, Ms. MacDonald identified conversion of the data, addition of IP addresses, and a "management function" as the purpose of AOL's purchase of the port modem management service, which she characterized as an "enhanced service."  The fact that AOL needed these additional functions, however, does not change the fact that the true object of the service was to transmit data from the AOL member to the AOL Data Centers; the true object was not to provide these ancillary functions. Accordingly, the sale of the port modem management service was subject to taxation as telecommunications services.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

---

(...continued)

AOL member transmissions . . . in Tennessee and other locations throughout the United States off of the public switched telephone network and routed and transmitted such member transmissions to the AOL data centers in Virginia.

[10]  In her affidavit, Ms. MacDonald stated:

Sprint converted the information packet, which was received at the AOL Dedicated POP in analog form, into a digital format *for the purpose of being transmitted*, in the TCP/IP protocol, over the Sprint Private Backbone to the AOL Data Centers in Virginia . . . .  In addition, at the AOL Dedicated POP, Sprint consolidated the members' information packets *for transmission* over the Sprint Private Backbone.

Emphasis added.

