Harvey J. DUNCAN, a/k/a Jim Duncan,
Appellant (Plaintiff),

v.

AFTON, INC., a Tennessee corporation,
d/b/a Healthcomp Evaluation Services
Corporation, d/b/a National Ameritest,
a/k/a Ameritest; and Leigh Ann Shears,
an individual, Appellees (Defendants).

No. 99–24.

Supreme Court of Wyoming.

Nov. 30, 1999.

Representing Appellant: Sharon M. Rose of Vehar, Beppler, Lavery & Rose, P.C., Evanston, Wyoming.

Representing Appellees: John P. LaBuda and Stephen K. Palmer of Palmer & LaBuda, P.C., Rock Springs, Wyoming. Argument by Mr. LaBuda.

Representing Wyoming Trial Lawyers Association as Amicus Curie: Thomas J. Klepperich of Lonabaugh and Riggs, Sheridan, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

GOLDEN, Justice.

A company and its employee were hired to collect a urine specimen in the first phase of a substance abuse testing program implemented by Solvay Minerals (Solvay) for its employees. In this case of first impression for Wyoming, we must decide whether the collecting company and its employee owe a duty of reasonable care to Solvay's employee who is required to submit a urine specimen. The district court ruled that, until it had direction from this Court, it would not hold that Wyoming law recognized such a duty; consequently, the district court dismissed the

complaint containing negligence claims against Afton, Ameritest,[1] and its employee. That action was filed by Harvey J. Duncan who was terminated by his employer, Solvay, when it received a report that Mr. Duncan's urine specimen, collected by Afton and its employee and analyzed by another company, Northwest Toxicology, showed a .32 urine alcohol content.

We hold that a collection company owes a duty of care to an employee when collecting, handling, and processing urine specimens for the purpose of performing substance abuse testing. We reverse the dismissal and remand for further proceedings.

## ISSUES

Duncan presents the following issues for our review:

A. Did the district court err in dismissing the complaint and failing to recognize that plaintiff had also pled a cause of action for negligent misrepresentation.

B. Did the district court err in failing to recognize a duty of care from a collection company, who at the request of an employer, collects urine specimens of employees for the purpose of performing drug and alcohol testing, to the donor/employee.

Afton rephrases the issues as:

A. Did the District Court properly dismiss Plaintiff's complaint finding that no legal duty exists between Plaintiff and Defendants?

B. Did the District Court err in not separately addressing Plaintiff's alleged claim of negligent misrepresentation?

The Amicus Curiae brief of Wyoming Trial Lawyers Association accepted the issues presented by Duncan and did not present others.

## FACTS

Duncan was an employee of Solvay Minerals in Sweetwater County. Solvay contracted with Afton to collect urine specimens of

---

1. Duncan filed suit against "Afton, Inc., a Tennessee corporation, d/b/a Healthcomp Evaluation Services Corporation, d/b/a National Ameritest, a/k/a Ameritest; and Leigh Ann Shears, an indi-

vidual." The specimen was collected by Ameritest. For purposes of this appeal, we shall refer to these appellees as Afton. Our decision applies to all appellees.

Solvay's employees from time to time for drug and alcohol testing. Solvay separately contracted with a laboratory, Northwest Toxicology, Inc. of Salt Lake City, Utah, to analyze the specimens and report the results to Solvay.

On December 15, 1997, Solvay ordered Duncan to submit a urine specimen for drug and alcohol testing. Duncan was randomly selected for the test in accordance with Solvay's substance abuse policy. Defendant Leigh Ann Shears, an employee of Afton, supervised the collection of a urine specimen from Duncan at Solvay's place of business.

■ Our standard for reviewing dismissed actions requires that we accept as true all of the facts alleged in the complaint. *Feltner v. Casey Family Program*, 902 P.2d 206, 207 (Wyo.1995). Duncan alleges that upon providing a urine specimen to Shears in an unsealed container, Shears directed him to return to the restroom to wash his hands. While Duncan was in the restroom, the specimen remained unsealed and out of Duncan's direct sight for that period of time. He alleges that upon his return from the restroom, Shears proceeded to seal the urine specimen and to obtain Duncan's initials on the specimen label. Shears failed to note the temperature of the specimen at the time it was taken as required by standard testing protocol. Duncan further alleges that Afton and Shears subsequently altered the chain of custody documents to make it appear that the temperature had been properly tested.[2]

Solvay received a report that Duncan's specimen had a urine alcohol content of .32, which Duncan alleges is an amount that would have rendered him so intoxicated that he would have been unable to function and would have appeared blatantly intoxicated. The specimen was collected approximately ten hours into Duncan's twelve-hour shift. Duncan denies consuming alcohol that day. Duncan claims that grievous errors in the collection process and the inherent unreliability of the process of testing urine for alcohol content caused the test result.

Based on the .32 report, Solvay terminated Duncan's employment on December 23,

1997. He filed suit in June of 1998, naming Afton and Shears as defendants, claiming that Afton negligently instructed and trained Shears; failed to employ proper collection and handling procedures for urinalysis of alcohol content; failed to inform Solvay that urinalysis is unreliable if specific procedures are not followed; and misrepresented to Solvay the accuracy and reliability of urine alcohol testing. Appellees answered the complaint and filed a motion to dismiss, contending that they did not owe a duty of reasonable care in the collection of the urine specimen, and filed for a protective order to stay discovery, pending the ruling on dismissal, which order was granted on October 1, 1998. That order prevented investigation of all other stages of the testing process to determine if other defendants should be named. The suit was dismissed before discovery, thus precluding Duncan from amending the complaint to name the employer and the laboratory performing the test as defendants.

In its decision letter, the district court noted that a duty of care was not established by contract or statute, and, under common law Wyoming had not established such a duty of care and it would not find such a duty without direction from this Court. In further analyzing whether the duty of care owed a patient by a physician provided a common law basis for the proposed duty of care in this instance, the district court determined that the rule of law is that a physician examining an employee for an employer owes no duty of care to an employee because a physician-patient relationship does not exist. The court ruled the relationship did not extend to create a duty of care to be imposed on Afton and its employee. Holding that a duty of care was not created by contract, statute, or common law, the district court entered an order dismissing the action, and this appeal followed.

## DISCUSSION

### Standard of Review

■ In considering a motion to dismiss pursuant to W.R.C.P. 12(b)(6), the Court

2. At oral argument, Duncan explained that his copy of the paperwork showed no temperature was taken, other copies retained by Afton indicated a temperature.

must focus on the allegations contained in the complaint and liberally construe them in the light most favorable to the plaintiff. *Feltner*, 902 P.2d at 207. We affirm an order of dismissal only when it is certain from the face of the complaint that the plaintiff cannot assert any facts which would entitle him to relief. Dismissal is a drastic remedy which should be granted sparingly; however, it "is the proper method for testing the legal sufficiency of the allegations and will be sustained when the complaint shows on its face that the plaintiff is not entitled to relief." *Id.* at 208.

The elements of a cause of action for negligence include: (1) a duty owed to the plaintiff; (2) a breach, or violation of that duty; (3) which is the proximate cause of (4) plaintiff's injuries. *Lynch v. Norton Const., Inc.*, 861 P.2d 1095, 1099 (Wyo.1993).

Essential to any negligence cause of action is proof of facts which impose a duty upon defendant. *See, ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 931 (Wyo.1981). The question of the existence of a duty is a matter of law for the court to decide. *Id.*, at 932. A duty exists where, "upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." Prosser and Keeton on Torts § 37 at 236 (5th ed.1984).

*Goodrich v. Seamands*, 870 P.2d 1061, 1064 (Wyo.1994). Whether Afton owed a duty to Duncan to use reasonable care in the collection and processing of the urine specimen is a question of law that is reviewed de novo. *Id.*

### Parties' Arguments

Preliminarily, Duncan contends that privity of contract is not necessary to give rise to a duty in the drug and alcohol testing context. No contract or statute is in effect that would impose a duty of care on a collector of urine specimens to an employee or potential employee; accordingly, any duty owed arises from common law principles. Noting that case authorities involve both testing laborato-

ries and collectors of specimens, Duncan claims that this Court need not distinguish between a testing laboratory and a collector because the rationale imposing a duty is the same: that the party in the best position to guard against injury owes a legal duty of reasonable care when the risk of significant injury from the party's conduct is foreseeable and the likelihood of injury is great.

Afton contends that other parties are involved in drug and alcohol testing and relies upon an eight-part test articulated in *Ortega v. Flaim*, 902 P.2d 199 (Wyo.1995), to assert that a collector is the party least to blame for a false positive result. Afton states that other jurisdictions have divided in deciding that a specimen collector owes a duty to an employee, and contends that a duty should not be recognized unless the parties have a contract. Because Afton had no contract with Duncan, it reasons it owed him no duty.

### Privity

The privity requirement has long been imposed to eliminate the threat of indeterminate, unchecked liability for economic damages. *Century Ready–Mix Co. v. Campbell County School Dist.*, 816 P.2d 795, 804–05 (Wyo.1991). Without a contractual relationship between Afton and Duncan, the privity requirement would prohibit imposing liability. We have previously ruled, however, that the privity requirement should be discarded when the legal theory is negligence or negligent misrepresentation:

Traditionally, attempts by injured third parties to recover for damages arising out of the negligent performance of a contractual duty fail because of lack of privity. *See Ultramares Corporation v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931) and *see generally* 57A Am.Jur.2d *Negligence*, § 123 (1989). Courts first discarded the requirement of privity in product liability cases based on negligence. *See MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916). The basis of liability may be negligent misrepresentation. *Martin v. Bengue, Inc.*, 25 N.J. 359, 136 A.2d 626 (1957). Damages in product liability suits have not been limited to physical injury; recovery has also been permit-

ted for economic loss. *See Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1965). An exhaustive review of economic loss damages is provided in *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 666–82 (Wyo.1989), Urbigkit, J., dissenting.

Courts, upon abandonment of the privity requirement, expanded tort liability by holding that a third party, not in privity of contract with a professional person or entity, may recover for negligence which proximately causes a foreseeable economic injury to him. The general principle is delineated in Restatement (Second) Torts, *supra*, § 552 (Topic 3. Negligent Misrepresentation).

*Century Ready–Mix Co.*, 816 P.2d at 804–05 (footnote omitted).

Duncan has advanced both negligence and negligent misrepresentation theories; therefore, privity concerns are not presented in this case. Under ordinary negligence principles, we must explore whether a third party stands in such a relationship with collection agencies that policy considerations require that tort liability should be imposed.

### Duty

On the several occasions that courts have addressed the liability of parties performing drug and alcohol testing, variations in the particular facts, the legal theories advanced, and the rationale employed resulted in few decisions containing a comprehensive duty of care analysis. Courts have divided in deciding whether a party involved in performing drug and alcohol testing of employees and potential employees owes a duty of care to those persons.[3]

As support for the proposition that it owes no duty of reasonable care to the employee,

Afton relies on the reasoning of *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347 (Tex. 1995). *SmithKline* ruled that a drug tester retained by an employer to screen a potential employee owes no duty to that potential employee to warn her about the possible effects of consuming poppy seeds prior to the test. *Id.* at 351–54. Rationalizing that it was impossible either to inform a test subject of all possible causes of positive results other than using drugs or to warn that test results might be misinterpreted, the Texas Supreme Court determined that any duty of care was a burden more properly placed with employers, the clients of SmithKline. *SmithKline*, 903 S.W.2d at 354; *see also SmithKline*, 903 S.W.2d at 358–59 (Gammage, J., dissenting). The Fifth Circuit interpreted *SmithKline* as authority that no duty is owed and withdrew an earlier decision that generally held a drug tester owes a duty of reasonable care to the employee. *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 316 (5th Cir.1995); *Willis v. Roche Biomedical Labs., Inc.*, 21 F.3d 1368 (5th Cir.1994).

The court in *SmithKline* thought it significant that the New York Court of Appeals had held that no tort duty to use reasonable care should be imposed on polygraph test operators when polygraph results would be a factor in hiring and firing decisions. *SmithKline*, 903 S.W.2d at 352 (citing *Hall v. United Parcel Serv. Of America*, 76 N.Y.2d 27, 556 N.Y.S.2d 21, 555 N.E.2d 273, 276–78 (N.Y.1990)). Concerning this point, a federal court sitting in New York has recently found that "the *Hall* case, while persuasive and helpful, is not controlling. Polygraphs and urinalyses are distinct enough that this court believes the New York Court of Appeals would engage in fresh analysis to decide whether or not the common law of this state recognizes the action Santiago is attempting

---

**3.** A duty of care was recognized in *Santiago v. Greyhound*, 956 F.Supp. 144, 147–53 (N.D.N.Y. 1997); *Nehrenz v. Dunn*, 593 So.2d 915, 917–18 (La.App.1992); *Elliott v. Laboratory Specialists, Inc.*, 588 So.2d 175, 176 (La.App.1991); *Lewis v. Aluminum Co. of America*, 588 So.2d 167 (La. App.1991); *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill.App.3d 659, 207 Ill.Dec. 96, 646 N.E.2d 930, 934 (1995).

Those cases refusing to find a duty are *Smith-Kline Beecham Corp. v. Doe*, 903 S.W.2d 347

(Tex.1995), and *Caputo v. Compuchem Labs., Inc.*, Civ. A. No. 92–6123, 1994 WL 100084 (E.D.Pa. Feb.23, 1994).

Decisions made upon legal theories other than negligence include *Herbert v. Placid Refining Co.*, 564 So.2d 371, 374 (La.App.1990) (dismissed on grounds that Louisiana does not recognize the tort of negligent interference with contract); *Devine v. Roche Biomedical Labs.,Inc.*, 637 A.2d 441, 447–48 (Me.1994) (tort claims denied without conducting a duty of care analysis).

to pursue." *Santiago v. Greyhound*, 956 F.Supp. 144, 149 (N.D.N.Y.1997). The court in *Santiago* conducted a comprehensive duty analysis and found a duty to exist.

Afton directs our attention to two other cases specifically holding that a testing laboratory owes no duty of care to an employee, *Caputo v. Compuchem Laboratories*, Civ. A. No. 92–6123, 1994 WL 100084 (E.D.Pa., Feb.23, 1994), and *Herbert v. Placid Refining Co.*, 564 So.2d 371, 374 (La.App.), *writ denied*, 569 So.2d 981 (La.1990). Both of these cases reached their holdings with little or no duty of care analysis. *Caputo* refused to find that a drug tester owed any duty beyond providing an accurate report. *Caputo*, at *3. The laboratory reported a urinalysis as positive for morphine and the employer terminated plaintiff's employment based upon this result. Claiming that the result was due to poppy seed consumption, the employee had an independent laboratory test the same specimen and confirmed the accuracy of the result. However, the positive result was at such a low level that, among other claims, plaintiff contended the laboratory had a duty either to corroborate the result by an additional test identified in federal regulations before reporting the positive result to the employer, or to ensure the employer properly interpreted the result. *Caputo*, at *2. The federal district court disagreed, finding it inappropriate to impose a duty on the laboratory to verify positive results or to notify the employer, and finding that neither the facts nor the law supported holding a laboratory negligent for accurately reporting a positive result without verifying the result. *Caputo*, at *3.

In *Herbert*, a Louisiana intermediate appellate court held that a testing laboratory had no duty to competently analyze the urine of a plaintiff. Analogizing the action to one of negligent interference with a contract, a tort not recognized in Louisiana, the court limited its analysis to a determination that no relationship existed between the plaintiff-employee and the testing laboratory that would justify imposing a duty. *Herbert*, 564 So.2d at 373–74. Other Louisiana intermediate appellate courts have specifically rejected the holding in *Herbert*, holding that a claim in general negligence exists based on a breach of a duty to perform drug tests in a competent and non-negligent manner. *Nehrenz v. Dunn*, 593 So.2d 915, 917 (La.App.1992); *Elliott v. Laboratory Specialists, Inc.*, 588 So.2d 175, 176 (La.App.1991), *writ denied*, 592 So.2d 415 (La.1992); *Lewis v. Aluminum Co. of America*, 588 So.2d 167, 170 n. 3 (La.App.1991), *writ denied*, 592 So.2d 411 (La.1992).

When this Court has considered whether a duty should be imposed based on a particular relationship, we have balanced numerous factors to aid in that determination: [4]

> (1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

*Ortega v. Flaim*, 902 P.2d 199, 203, 206 (Wyo. 1995) (quoting *Mostert v. CBL & Associates*, 741 P.2d 1090, 1094 (Wyo.1987), citing to *Gates v. Richardson*, 719 P.2d 193, 196 (Wyo. 1986), quoting *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal. Rptr. 14, 551 P.2d 334, 342 (1976)).

 Afton contends that harm to Duncan is not foreseeable merely by its selection of urine as the subject of collection and analysis. Duncan disagrees, indicating evidence exists that urinalysis for alcohol content is unreliable and Afton negligently recommended it to Solvay. Duncan further contends that Afton negligently collected and handled his urine specimen. We find that Afton could foresee that improper collecting

---

4. Besides Wyoming's balance of factors test, we note that two other common methods for determining the existence of a duty, the foreseeability test and the risk-duty analysis, are used in those decisions analyzing an employee's drug testing claim. Amy Newnam, Jay M. Feinman, *Liability of a Laboratory for Negligent Employment or Pre-Employment Drug Testing*, 30 Rutgers L.J. 473, 478–83 (1999).

and handling of the specimen could contribute to a false positive result and could injure an employee. *Santiago,* 956 F.Supp. at 152–53; *accord Stinson v. Physicians Immediate Care, Ltd.,* 269 Ill.App.3d 659, 207 Ill.Dec. 96, 646 N.E.2d 930, 933–34 (1995); *Lewis,* 588 So.2d at 170.; *Elliott,* 588 So.2d at 176. It is foreseeable that in recommending testing to an employer, Afton's failing to inform the employer about the proper interpretation and procedures when positive results occur could injure an employee.

Assisted by *Santiago's* discussion of the social considerations supporting the imposition of a duty, we see the emergence of a connection between Afton's conduct and Duncan's injury. Companies performing drug and alcohol testing benefit financially from a market increasing for two reasons: research showed that testing is now commonplace by employers because employee substance abuse is perceived as causing lost productivity, and because employers generally believe in the accuracy of drug tests, it "may lead employers to repose undue confidence in their results." *Santiago,* 956 F.Supp. at 151.

> One statistical study found that "two out of every five workers testing positive truly are drug free." Drug screens are plagued by the problems of "cross-reactivity"— namely, the familiar concern that metabolites of benign consumables, like poppy seed muffins, will be confused with metabolites of illicit substances; "impairment detectability" ...; "passive inhalation" ...; specimen dilution, substitution or adulteration; improper calibration or cleaning of testing equipment; and simple technician error.

*Id.* (citations omitted). As a company contracting with an employer to collect and handle specimens for employee alcohol testing, Afton is aware that the likely effect of a false positive result is significant and devastating; employment will likely be terminated and future prospects of employment adversely impacted. Duncan presents a claim that, as a direct result of Afton's negligent conduct, his employer terminated his employment because of erroneous alcohol testing results, and Afton's conduct ascertainably injured Duncan, satisfying the second and third factors in our duty analysis. *See Santiago,* 956 F.Supp. at 151.

In assessing the moral blame factor, several considerations make it appropriate to impose a duty of reasonable care upon a collection company: its direct financial benefit in providing alcohol testing services to Duncan's employer; its direct control over establishing and ensuring proper collection and handling procedures; its ability to hire and train competent personnel to perform services; and its ability to contract with the employer to ensure test results are properly interpreted and utilized.

Perhaps the most important factor in this analysis is whether the policy of preventing future harm is at issue. Afton does not present an argument on this particular factor. Companies like Afton provide services that present a risk of harm great enough to hold them accountable. The particular services provided demand adequate protection of employees' interests to prevent future harm, and the imposition of a duty to act reasonably will reduce the likelihood of injury. There is little question that our ruling that Afton owes a duty places a burden upon Afton to act in a "scientifically reasonable manner" and guard against human error; however, Afton is in the best position to guard against employee injury arising from its collection and handling procedures. *Elliott,* 588 So.2d at 176. Because Afton is paid for its services, it is better able to bear the burden financially than the individual wrongly maligned by a false positive report. *Stinson,* 207 Ill.Dec. 96, 646 N.E.2d at 934.

Afton argues that it is the employer and the laboratory performing the test which are in the best position to bear the burden of liability. In this case, Solvay contracted with another laboratory to perform the test and did not involve Afton in its decision to use Duncan's test result to terminate his employment. Duncan responds that it was Afton that represented to Solvay that urinalysis was a reliable method of testing for alcohol, and Solvay relied upon those representations. Duncan concedes that his discovery, limited by protective order, followed by the dismissal of this action, leaves him uncertain whether other actors will be joined in the complaint if

this case is remanded. That others may have acted wrongfully in terminating Duncan's employment is not proper grounds for refusing to impose a duty of care on Afton to collect and handle urine specimens and, when it makes representations, to properly educate employers with reasonable care because there is no question that it is in a better position to do so.

The factor of "the consequences to the community and the court system" scrutinizes the negative aspects inflicted upon society by creating a new cause of action. The positive consequences to the community in protecting employees' interests are not outweighed by society's interest in detecting substance abuse. In considering whether the court system is adversely affected by recognizing this new cause of action, our general concern is the burdensome increase of litigation. Afton has argued that its role in the process is too remote to find that it is a proper defendant. It claims that the employer and the testing laboratory are the proper parties to this suit because any harm to Duncan was the result of their actions in reporting an erroneous test result, and in acting upon the erroneous information. Afton contends that if it is found to owe a duty of care then any actor involved in this process, such as the company that ships the specimen to the laboratory, will be joined in the action as defendant. Our analysis has already determined that Afton was not remote to this process of substance abuse testing. It exists to perform these services and is in a position to control the accuracy and the reliability of the testing method and collection process. We do not believe it can be said that shipping specimens as part of a general shipping business places the shipping company in a position to control similar aspects of the testing process. The imposition of a duty of care on the part of Afton will not unduly burden the court system.

Finally, Afton presents no argument on the final factor's concern with availability and prevalence of insurance, and we do not find it necessary to our consideration.

 Duty is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is enti-

tled to protection. *Gates*, 719 P.2d at 196. The sum total of our considerations supports imposing a duty upon Afton. We reverse the district court's order dismissing the action and remand for further proceedings.

### Negligent Misrepresentation

Duncan contends that the district court, in dismissing this suit, failed to recognize that he had presented a claim of negligent misrepresentation. The dispositive issue before the district court was the existence of a duty; having found no duty, the district court dismissed the entire suit. Because we hold Afton owes such a duty, Duncan is free to amend his complaint under W.R.C.P. 15 to separately plead this cause of action.

### CONCLUSION

 A company collecting urine specimens as part of an employer's substance abuse testing program owes a duty of care to the employee who submits a specimen. We reverse the district court's order dismissing Duncan's suit and remand for further proceedings.