IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 15, 2010 Session

# ADMIRAL WEBSTER v. PSYCHEMEDICS CORPORATION[1]

**Appeal from the Circuit Court for Monroe County**
**No. V-06304P      Lawrence H. Puckett, Judge**

---

**No. 2010-01087-COA-R3-CV-FILED-JUNE 24, 2011**

---

The plaintiff's employment was terminated by the employer for violation of the company's drug testing policy. The plaintiff alleged negligence against the defendant, a biotechnology company with independent laboratory facilities providing hair testing for the detection of drugs and providing drug-testing services to the plaintiff's former employer. The trial court granted the defendant's motion for summary judgment. The plaintiff appeals. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Brian E. Nichols, Loudon, Tennessee, and J. Timothy Bobo and Ryan C. Edens, Clinton, Tennessee, for the appellant, Admiral Webster.

Charles H. Hollis, New Orleans, Louisiana, and Elmer E. White, III, Birmingham, Alabama, for the appellee, Psychemedics Corporation

**OPINION**

**I. BACKGROUND**

---

[1]Mr. Webster initially sued his former employer, Koyo Corporation of U.S.A. ("Koyo"), in addition to Psychemedics Corporation. The court was informed that Koyo was not a real party in interest and that JTEKT Automotive Tennessee - Vonore ("JTEKT") should be substituted for Koyo. On November 13, 2007, all claims against JTEKT were dismissed with prejudice. Because most of the documents in the record refer to Koyo, for consistency purposes we will use that name for the employer in this opinion.

The plaintiff, Admiral Webster, was hired as a production technician by TRW Koyo Steering Systems Company in January of 2001. At the time of his hire, Mr. Webster was advised of the substance abuse policy during a training session and signed a document acknowledging the random drug testing program. Prior to March 2004, it appears that TRW's interest in the company was bought out by Koyo Corporation of U.S.A. ("Koyo"). Koyo revised the substance abuse policy and required Mr. Webster to sign an Acknowledgment and Consent Form whereby he agreed

> to hold Tennessee Koyo and its agents harmless from any liability arising in whole or in part from any act of negligence by any of them in connection with collection of specimens, testing, and use of the results of said testing in connection with [his] employment . . . .

Mr. Webster signed the form on March 4, 2004.

On August 3, 2005, Mr. Webster was informed by his supervisor and Koyo's company nurse that he had been randomly selected to submit for drug testing. Mr. Webster went to the nurse's station located on Koyo's premises and provided a sample of hair from his underarm for testing. While at the nurse's station, Mr. Webster completed and signed Koyo's Substance Abuse Testing Voluntary Notification form, but he mistakenly dated the form August 3, 200*4* as opposed to August 3, 200*5*. After providing a photo ID for proof of identification, Mr. Webster signed the custody and control form certifying that he voluntarily provided the sample and acknowledging that the collection procedures were followed. Pam Nichols, Koyo's nurse, also signed the custody and control form; she mistakenly dated the form August *1*, 2005, as opposed to August *3*, 2005.

The defendant, Psychemedics Corporation ("Psychemedics"), is a biotechnology company with independent laboratory facilities providing patented hair testing for the detection of drugs. Psychemedics' testing services are used by a number of employers in their drug testing programs. In a release, Mr. Webster agreed as follows:

> I consent to the testing of the sample by Psychemedics Corporation and to the release of the results to the named test result recipient. I hereby release Psychemedics Corporation, its officers, employees, agents and representatives from any and all liabilities arising from the reporting of my results to the authorized recipient and the recipient's use thereof.

After Mr. Webster's hair sample was collected by Ms. Nichols, it was placed in a piece of aluminum foil; the foil with the hair sample was placed in a sample acquisition card and sealed. Mr. Webster initialed the card after it was sealed. The card was then placed in

a plastic bag that was sealed with tamper-evident tape. Mr. Webster placed his initials on the tape and dated it August 3, 2005.

The test result on the hair sample was positive for the presence of cocaine. Mr. Webster was informed on August 8, 2005, and was escorted from Koyo's facility. The very day he was terminated, Mr. Webster went to his family physician, Peter Stimpson, M.D., and provided a urine sample. A test was conducted on the urine sample by Medtox Laboratories, Inc. of St. Paul, Minnesota. The urine test result dated August 15, 2005, was negative. On August 16, 2005, Mr. Webster provided a hair sample for testing at the Tennessee Drug & Alcohol Consortium in Alcoa, Tennessee. Quest Diagnostics of Atlanta, Georgia, conducted the test and its August 17, 2005 report indicated the test results were negative.

Alleging that he was the victim of a "false positive," Mr. Webster sued his employer and Psychemedics for negligence, defamation, and breach of contract. The negligence claim against Psychemedics is the subject of this appeal.

Psychemedics moved for summary judgment on the basis that Mr. Webster lacks sufficient probative evidence to substantiate the essential elements of his claims. The trial court granted Psychemedics' motion for summary judgment upon finding that while Psychemedics owed a duty of care to Koyo's employee, Mr. Webster had waived his claim by agreeing to the exculpatory clauses. Mr. Webster filed this timely appeal.


## II. ISSUES

The issues presented by Mr. Webster are as follows:

1. Was the trial court correct in its determination that Psychemedics owed a duty of care to Mr. Webster?

2. Did the trial court correctly grant summary judgment to Psychemedics on the basis that the exculpatory clauses do not violate public policy and are enforceable as to Psychemedics?

An additional issue presented by Psychemedics is the following:

3. As a matter of law, did Mr. Webster offer sufficient evidence to establish negligence on the part of Psychemedics?

## III.  STANDARD OF REVIEW

Tenn. R. Civ. P. 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts.  *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

In *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), the Tennessee Supreme Court clarified the moving party's burden of proof in a summary judgment motion.  A moving party who seeks to shift the burden of production to the non-moving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the non-moving party's claim; or (2) show that the non-moving party cannot prove an essential element of the claim at trial. *Id.* at 5.  According to the Court, when a party seeking summary judgment has made a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.  *Id.*; *see Byrd*, 847 S.W.2d at 215; *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). The non-moving party may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) to show that there is a genuine issue for trial.  If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party.  Tenn. R. Civ. P. 56.06.

There is no presumption of correctness for summary judgments on appeal.  *See City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997). This court must view all of the evidence in the light most favorable to the non-movant and resolve all factual inferences in the non-movant's favor. *Luther v. Compton*, 5 S.W.3d 635,639 (Tenn. 1999); *Muhlheim v. Knox County Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). When the undisputed facts, however, support only one conclusion, then the moving party is entitled to judgment as a matter of law and a summary judgment will be upheld.  *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV.  DISCUSSION

### A.  Drug Testing, Duty of Care, and Public Policy

The doctrine of employment at-will is a longstanding rule in Tennessee which recognizes the right of either the employer or the employee to terminate the employment

relationship at any time for good cause, bad cause, or no cause at all, without being guilty of a legal wrong. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn. 1997); *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 443 (Tenn. 1984). Tennessee courts have continued to uphold the viability of the rule, recognizing the need for employers to retain a great deal of discretion in employing and discharging employees. *See Harney v. Meadowbrook Nursing Center*, 784 S.W.2d 921, 923 (Tenn. 1990); *Chism v. Mid-South Milling Co.*, 762 S.W.2d 552, 556 (Tenn. 1988).

By statute and case law, however, some restrictions have been imposed upon the right of an employer to terminate an at-will employee. *Stein*, 945 S.W.2d at 717. The reasons for such restrictions have been based on well-defined public policy. For example, in Tennessee any right to terminate an employee for service on a jury has been eliminated. *Chism*, 762 S.W.2d at 555-56 (*see* Tenn. Code Ann. § 22-4-108(f)). There are restrictions upon employment or termination for discriminatory reasons involving race, creed, color, sex, age, religion, national origin, or handicap. *Chism*, 762 S.W.2d at 555-56 (*see* Tenn. Code Ann. §§ 4-21-401(a), 8-50-103). In order to state a claim for such relief, it must be shown that a clear violation of some well-defined and established public policy has occurred. Examples cited by the *Chism* Court included dismissals for refusal to commit perjury, insistence on obeying a lawful subpoena, insistence on giving truthful testimony, honoring a subpoena to jury duty, and failing to seek release from jury duty. *Chism*, 762 S.W.2d at 556. Other examples given were the refusal to falsify records or to acquiesce in illegal conduct. *Id.*

This court in *Stein v. Davidson Hotel Co.*, No. 01-A-01-9509-CV-00407, 1996 WL 230196 (Tenn. Ct. App. 1996), a wrongful discharge case, stated that "Davidson's policy of terminating employees who test positive for drugs does not violate any public policy known to this court. To the contrary, Tennessee's public policy is in total opposition to drug use in the workplace." 1996 WL 230196, at *6. The Tennessee Supreme Court affirmed our decision in *Stein* and commented that there is "no well-defined public policy which is violated by a private employer discharging an at-will employee who tests positive for drug use on a random drug test." *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, ____ (Tenn. 1997).

In *Hackney v. DRD Management, Inc.*, No. E1999-02107-COA-R3-CV, 2000 Tenn. App. LEXIS 205 (Tenn. Ct. App. E.S. March 31, 2000), this court held as follows:

> Tennessee case law has described the employment-at-will doctrine as allowing the employer or the employee to terminate the employment relationship at any time for any reason. . . .

* * *

. . . We conclude that the public policy evidenced by the Drug-Free Workplace Programs Act is dismissal of employees for drug use. We are not inclined to extend public policy to include a requirement that all private employers who perform drug testing on at-will employees comply with chain of custody procedures.

. . . In Tennessee, there is no constitutional, statutory or regulatory provision which clearly evidences a public policy in favor of accuracy in drug testing for private employers.

*Hackney*, 2000 Tenn. App. LEXIS 205, at \*16-19 (citations omitted).

Accordingly, the law in this state is clear that an employee can be terminated on the basis of testing positive on a drug screen negligently performed by the testing facility. *See Stein*, 945 S.W.2d at 719. This court is aware of no common law duty imposed on employers with respect to substance abuse testing performed by third party laboratories.

Significantly, the appeal before us does not involve an employer. Rather, it concerns a negligence action against a laboratory. In this matter, we must decide whether Psychemedics, the company hired by Koyo to perform random drug tests, owed a duty of reasonable care to Mr. Webster, Koyo's employee.

To sustain a negligence claim under Tennessee law, a plaintiff must show that the defendant owed a duty to the plaintiff; a breach of that duty; an injury or loss; causation in fact; and proximate, or legal, cause. *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998); *Miller v. Niblack, M.D.*, 942 S.W.2d 533, 542 (Tenn. Ct. App. 1996). Thus, in order to succeed on a claim of negligence, Mr. Webster is required to prove: (1) a duty of care owed to him by Psychemedics; (2) conduct on the part of Psychemedics falling below the applicable standard of care that amounts to a breach of that duty; (3) and injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. *McClung v. Delta Square Ltd., Inc.*, 937 S.W.2d 891, 894 (Tenn. 1996).

The question of whether a duty exists is one of law and "requires consideration of whether 'such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others – or, more simply, whether the interest of the plaintiff which has suffered the invasion was entitled to legal protection at the hands of the defendant.'" *Coln*, 966 S.W.2d 34, 39 (Tenn. 1998)(quoting Prosser and Keeton on Torts § 37 at 236 (5th ed. 1984)). *See also Duncan v. Afton, Inc.*, 991 P.2d 739, 742 (Wyo. 1999). Duty is defined as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm,"

and a duty exists "if defendant's conduct poses an unreasonable and foreseeable risk of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). A risk is unreasonable where "the foreseeable probability and gravity of harm posed by the defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* This requires consideration of a number of factors, including "the foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct of the defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; the relative usefulness of the safer conduct; and the relative safety of alternative conduct." *Id.*

Relying on the at-will employment doctrine, Psychemedics argues that Mr. Webster can have no negligence claim against it for facilitating conduct for which the at-will employer cannot be held liable.

Some courts in other states have refused to impose a duty on the testing entity. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347 (Tex. 1995); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 316 (5th Cir. 1995) (applying Texas law); *Frank v. Delta Airlines, Inc.*, 2001 WL 910386 (N.D. Tex. 2001) (finding laboratory owed no duty of care to employee); *Herbert v. Placid Ref. Co.*, 564 So.2d 371, 374 (La. Ct. App. 1990) (holding laboratory owed employee no duty to properly analyze test sample); *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705 (Tex. 2003) (indicating that Texas law does not recognize a duty of care owed from a third party testing laboratory to a test subject).

In other jurisdictions, courts have recognized some duty of care of testing facilities to employees drug-tested at their employers' behest. *See Stinson v. Physicians Immediate Care, Ltd.*, 646 N.E.2d 930, 934 (Ill. Ct. App. 1995) (holding that although the plaintiff could not recover on the basis of a contractual duty, "[t]here need not be a contract between the plaintiff and the defendant for the defendant to owe a tort duty); *Nehrez v. Dunn*, 593 So. 2d 915, 917-18 (La. Ct. App. 1992) (finding laboratory owes employee a duty to perform test in competent manner); *Elliott v. Laboratory Specialists, Inc.*, 588 So.2d 175, 176 (La. Ct. App. 1991) (holding that employee who was discharged based on a drug test result could assert a claim for negligence against the drug testing laboratory that conducted the test, rejecting the contention of the laboratory that it owed no duty of care to the employee because its contractual arrangement was with the employer); *Santiago v. Greyhound Lines, Inc.*, 956 F.Supp. 144, 152-53 (N.D.N.Y. 1997) (holding that it was appropriate to recognize a duty of care on the part of the drug testing laboratory and would have allowed the plaintiff to proceed with a negligence claim had there been any evidence of negligence in the testing process); *Duncan v. Afton, Inc.*, 991 P.2d 739, 745 (Wyo. 1999) (holding company owed a duty of reasonable care to an employee required to submit to testing; risk of harm to an

employee of a false positive test is both foreseeable and significant; company derives a financial benefit from testing and has the ability to hire and train competent personnel; company was in better position to bear costs of improperly performed test than wronged employee and imposition of duty of care would create incentive to avoid future harm); *Ishikawa v. Delta Air Lines*, 149 F.Supp. 2d 1246 (D. Or. 2001); *Ragsdale v. Mount Sinai Med. Ctr. of Miami*, 770 So. 2d 167 (Fla. Dist. Ct. App. 3d Dist. 2000) (holding medical center that contracted with employer to conduct drug testing of employees owes a duty of reasonable care to employees, as harm to employees was foreseeable if drug test results were erroneously reported as positive.); *Chapman v. LabOne*, 460 F.Supp.2d 989, 1001 (S.D. Iowa 2006) (holding under Iowa law that a drug testing laboratory owes a duty of care to employees subjected to drug testing, because laboratory could anticipate the harm that could result to employees as a result of negligent conduct in processing samples); *Coleman v. Town of Hempstead*, 30 F.Supp.2d 356 (E.D.N.Y 1999) (finding that drug testing laboratory owed a duty of care to employee because of the devastating harm that can be caused because of an inaccurate test result and the fact that employers tend to have undue confidence in the results); *Sharpe v. St. Luke's Hospital*, 821 A.2d 1215 (Pa. 2003) (finding hospital drug testing lab that contracted with plaintiff's employer to collect samples had a duty of reasonable care to the employee; recognized substantial public interest in ensuring that care is exercised in connection with employment related drug testing; refused to uphold grant of summary judgment in negligence action, holding that it was up to the jury to determine whether testing lab had breached duty); *Warshaw v. Concentra Health Services*, 719 F.Supp. 2d 484 (E.D. Pa. 2010) (holding employee had stated a claim for negligence based on drug testing service's failure to meet duty of care; defendant should have foreseen that its negligence would harm plaintiff's employment and defendant was in the best position to ensure the non-negligent processing and reporting of test results and to limit its liability by acting reasonably; rejected defendant's argument that employee could not show any causation between the drug test results and the termination of the plaintiff's employment finding that there was a genuine issue of material fact as to whether such a connection existed); *Balistrieri v. Express Drug Screening, LLC*, No. 04-C-0989, 2008 WL 906236 (E.D. Wis. 2008) (allowing negligence action against drug testing laboratory); *Smith v. Diamond Offshore Management Co.*, No. Civ. A. 03-2024, 2003 WL 23095586, *7-8 (E.D. La. 2003); *Quisenberry v. Compass Vision, Inc.*, 618 F.Supp. 2d 1223 (S.D. Cal. 2007) (laboratories owe a duty to the individuals whose specimens they test at the request of others); *Berry v. Nat'l Med. Servs.*, 205 P.3d 745 (Kan. Ct. App. 2009) (finding that Kansas law recognizes a duty owed from laboratories to test subjects); *Palonis v. Jewel Food Stores, Inc.*, 383 F.Supp. 2d 1072, 1074 (N.D. Ill. 2005) (concluding that a laboratory owes a duty of reasonable care to persons whose specimens it tests); *Williams v. National Railroad Passenger Corp.*, 16 F.Supp. 2d 178, 18-82 (D.Conn. 1998) (allowing employee who was discharged for failing a drug test to sue the facility for negligence in performing the test).

In this action, Mr. Webster alleges that as an expert in the field of drug testing, Psychemedics owed "a duty of reasonable care" to persons whose specimens it tests for employers. He alleges that he never used cocaine, and therefore Psychemedics "breached this duty of reasonable care in being negligent in handling the processing of [his] random drug screen." Mr. Webster alleges that he was injured as a result of the breach.

The trial court in the instant case found that Psychemedics owed a duty of care to Mr. Webster in undertaking his drug test at the request of the employer Koyo. The court based its conclusion on Tennessee common law regarding the legal duty owed by one party to another and its application to drug-testing companies. *See Coln v. City of Savannah*, 966 S.W.2d 34, 29 (Tenn. 1998); *Saulsberry v. Laboratory Corp. of America*, No. W2000-02826-COA-R3-CV, 2001 WL 912824 (Tenn. Ct. App. W.S., Aug. 6, 2001). The trial court also referenced the other jurisdictions that have established a duty of care in similar circumstances.

In *Saulsberry*, an action by an employee against a laboratory for damages resulting from his discharge from employment due to the alleged negligence of the laboratory in performing a random drug test, allowed a negligence action against a laboratory to proceed. The employee's specimen tested positive for cocaine and he was discharged from his employment. The employee sued the laboratory that conducted the test, alleging negligence in the testing procedure that resulted in a false report. We reversed the trial court's grant of summary judgment on the negligence claim, finding that a genuine "dispute of material fact" needed to be resolved regarding whether there was a lack of reasonable care to provide correct laboratory results. *Saulsberry*, 2001 WL 912824, at *5.

We agree with the conclusion of the trial court that Psychemedics owed a duty of due care in administering the drug test to Mr. Webster. When an individual is required, as a condition of employment, to submit a sample for testing, a duty of care is imposed between the professional testing entity and the employee. As a company contracting with employers across the country to perform substance abuse testing, Psychemedics is aware that the likely effect of a false positive result is significant and devastating to an employee; employment will likely be terminated and future prospects of employment adversely impacted. Laboratories like Psychemedics are in the best position to guard against injury, as they are solely responsible for the performance of the testing and the quality control process and are better able to bear the burden financially than the employee harmed by a false positive report.

## B. EXCULPATORY CLAUSES

The trial court found that Mr. Webster waived his negligence claim against

Psychemedics by agreeing to exculpatory clauses required by Psychemedics and Koyo. The court determined that the exculpatory clauses signed by Mr. Webster were not void against public policy and were enforceable as waivers of Psychemedics's liability, despite the duty it owed to Mr. Webster in handling, reviewing, and reporting his drug test. The trial court concluded that there was no public policy consideration against such exculpatory clauses evident in the public regulation of companies who conduct drug testing on behalf of Tennessee employers.

When Mr. Webster submitted his hair sample for testing, he signed the following release:

> I hereby release Psychemedics Corporation, its officers, employees, agents and representatives from all liability arising from the reporting of my results to the authorized recipient and the recipient's use thereof.

In our view, this language merely releases Psychemedics from liability "arising from the *reporting* of [Mr. Webster's] results," not from its alleged negligent handling and testing of the hair sample. (Emphasis added). *See Lewis v. Federal Reserve Bank*, No. Civ. A. 04-1452, 2004 WL 2035006, at *2 (E.D. La. Sept. 10, 2004). Thus, this exculpatory clause is ineffective as to the issue before us.

The other release provides as follows:

> I agree to hold Tennessee Koyo and its *agents* harmless from any liability in whole or in part from any act of negligence by any of them in connection with collection of specimens, testing, and use of the results of said testing in connection with my employment . . . .

(Emphasis added). This release only applies to Psychemedics if it is found to be Koyo's agent. The surrounding facts and circumstances determine whether one is an agent of another or an independent contractor. *See United States v. Boyd*, 363 S.W.2d 193, 200 (Tenn. 1982). As noted in *Boyd*, "[t]he mere placing of terms such as agent or independent contractor in the contract does not make them such in law." *Id.*

The principal distinction in the law between one who functions as an agent with that of one who functions as an independent contractor is based on "the extent of the control exercised" over the agent or independent contractor "in the performance of his work." *Boyd*, 363 S.W.2d at 197. The long-settled test in Tennessee for agency is "whether the principal has a right to control the conduct of the agent with respect to matters entrusted to the agent." *Sodexho Management, Inc. v. Johnson*, 174 S.W.3d 174, 178 (Tenn. 2005).

-10-

The "right of control is the primary or essential test of an agency relationship without which no agency exists. The same standard applies when the agency relationship is implied: the right of the principal to control the agent's conduct or the actual exercise of such control is the essential test." *Id.* (quoting *Nidiffer v. Clinchfield RR. Co.*, 600 S.W.2d 242, 245 (Tenn. Ct. App. 1980).

In *Boyd*, the Tennessee Supreme Court observed that

[g]enerally the distinction between the relation of principal and agent and employer and independent contractor is based on the extent of the control exercised over the employee in the performance of his work, he being an independent contractor if the will of the employer is represented only by the result, but an agent where the employer's will is represented by the means as well as the result.

*Boyd*, 363 S.W.2d at 197 (quoting Carbide & Carbon Chemicals Corp., 239 S.W.2d at 31 (Tenn. 1951) (quoting 2 C.J.S. *Agency* § 2)).

Psychemedics clearly serves in an independent contractor relationship with Koyo. The record does not support the conclusion that Koyo exercised any degree of control over the manner in which Psychemedics performed the drug testing. Accordingly, for purposes of Tennessee tort law, we find that Psychemedics is not an agent covered by the waiver provision.[2]

## C.

Psychemedics claims that the trial court erred in failing to make any determination regarding (1) whether Psychemedics failed to exercise reasonable care and (2) whether there was causation between the actions of Psychemedics and the harm of which Mr. Webster complains. According to Psychemedics, as a matter of law, Mr. Webster offered insufficient evidence to establish either.

It appears the trial court concluded the action upon finding that Mr. Webster had waived his negligence claim. As we have determined the holding by the trial court to be in error, and because there is uncertainty as to whether material facts are in dispute, we reverse the order granting summary judgment and remand for further proceedings.

---

[2]By finding that the exclusionary clauses do not apply to waive Mr. Webster's negligence claim, we do not reach the public policy issue raised by the parties.

## V. CONCLUSION

The judgment of the trial court is reversed and the cause is remanded for such further proceedings as necessary. Costs of the appeal are assessed to the appellee, Psychemedics.

_____
JOHN W. McCLARTY, JUDGE